Howard C. HAYES and Michael R. Hayes, Appellants,

v.

A.J. ASSOCIATES, INC., Alaska Marine Lines, Inc., Gordon S. Harang, and Eileen K. Harang, Appellees.

No. S–4837.

Supreme Court of Alaska.

Feb. 12, 1993.

Henry J. Camarot, Anchorage, for appellants.

James N. Reeves, Gregg B. Brelsford, Bogle & Gates, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

A lessee of mining rights on filled tidelands staked a claim to the mineral estate when he learned of a reservation of the mineral rights to the state in the patent. The lessor/surface owner sought ejectment. The lessee, alleging fraud, counterclaimed to recover the royalties paid under the lease. The superior court granted summary judgment for the lessor on the ground that the state did not reserve the minerals in the fill material. This court reversed, concluding that the state reserved the mineral rights to minerals in the fill material, and remanded for further proceedings. On remand, the superior court granted summary judgment in favor of the surface owner, concluding that the lessee's location was void *ab initio* because of his failure to locate in good faith. We reverse.

## I. FACTS AND PROCEEDINGS

### A. Factual Background

The real estate at issue has been the subject of two cases decided by this court, *State v. A.J. Indus., Inc.*, 397 P.2d 280 (Alaska 1964), hereinafter *"A.J. I"* and *Hayes v. Alaska Juneau Forest Indus., Inc.*, 748 P.2d 332 (Alaska 1988), hereinafter, *"A.J. II."* [1] As we described the property in *A.J. I,* "[it] was created over a period of twenty-five years by the dumping of rock and tailings on the tidal and submerged lands of [Gastineau Channel], the rock and tailings being produced by [A.J. Industries'] nearby mining operation." 397 P.2d at 281. In *A.J. I,* we held that A.J. Industries [2] had a class I preference right to acquire the underlying tidelands and submerged lands from the state under AS 38.05.320. In 1967, the state conveyed the property, known as Alaska Tidal Survey 201 ("ATS 201"), to A.J., reserving the mineral rights to itself. 748 P.2d at 334.

In September 1981 Michael Hayes and A.J. executed a lease, giving Hayes the right to mine a portion of ATS 201.[3] The lease expired in December 1981. While negotiations to renew the lease were in progress, Hayes continued mining under an oral extension of the lease. As we noted in *A.J. II,* "[w]hen negotiations failed to produce an agreement, Hayes staked mining claims on the property, contending that the minerals were owned by the state." 748 P.2d at 334.

Hayes staked these claims, known as Taku Claim Nos. 1 and 2, in July 1982. The area covered by Taku Claim Nos. 1 and 2 is larger than, and encompasses, the area covered by the lease. Although Hayes' application for a mining lease was rejected by the Department of Natural Resources (DNR) in November 1988, DNR issued a production license for the claims in September 1989. In DNR's view, the production license alone did not allow Hayes to mine; a lease was required as well.

### B. Procedural Background

A.J. filed this action for ejectment. The trial court granted partial summary judgment in favor of A.J., concluding that title to the fill material deposited on ATS 201 and rights to the minerals therein did not pass to the State of Alaska upon statehood, but were retained by A.J. The trial court permanently enjoined Hayes from conducting mining operations on ATS 201.

In *A.J. II,* we reversed the trial court, concluding that the tailings were real estate, title to which passed at statehood to the State of Alaska along with title to the underlying submerged lands. 748 P.2d at 337. We further held that rights to the minerals contained in the tailings were reserved by the state in the 1967 deed, and remanded to the superior court for further proceedings. *Id.*

On remand, the superior court granted A.J.'s renewed summary judgment motion. It concluded that Hayes had violated his obligation to act in good faith in the location of the mining claim.

In his motion for reconsideration, Hayes argued for the first time that the state, not A.J., was the owner of ATS 201 and that the public trust doctrine gave Hayes the right to enter ATS 201 to stake the claims. The superior court denied Hayes' motion for reconsideration, concluding that the 1967 patent conveyed title in fee simple, with a reservation of the mineral rights in the state. The court also concluded that, under this court's holding in *CWC Fisheries, Inc. v. Bunker*, 755 P.2d 1115 (Alaska 1988), the public trust doctrine only applies to land *under* navigable waters and that, because these lands are not under water, the doctrine is inapplicable. This appeal followed.

---

1. The facts set forth in those opinions provide much of the background necessary and will only be supplemented here as necessary.

2. A.J. Associates, et al., appellees in this case, are successors in interest to the appellees in both *A.J. I* and *A.J. II. See* 748 P.2d at 333.

Hereinafter, for convenience, appellees in all three cases will be referred to as "A.J."

3. Both Michael Hayes and his father, Howard Hayes, are parties to this action. They are hereinafter referred to in the singular as "Hayes."

## II.  DISCUSSION

### A.  Standard of Review

In reviewing a grant of summary judgment, we must determine whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Thorstenson v. ARCO Alaska, Inc.,* 780 P.2d 371, 374 (Alaska 1989). If the moving party establishes *prima facie* that it is entitled to judgment as a matter of law, the party opposing summary judgment must demonstrate that there exists a genuine issue of material fact to be litigated. *Id.* (quoting *Wassink v. Hawkins,* 763 P.2d 971, 973 (Alaska 1988)). In reviewing the grant of a motion for summary judgment this court must take a view of the facts which favors the non-movant. *Loyal Order of Moose v. International Fidelity Ins. Co.,* 797 P.2d 622, 628 (Alaska 1990).

### B.  Applicability of Public Trust Doctrine

■ In his motion for reconsideration, Hayes maintains that ATS 201, as "filled tidelands," was conveyed subject to a public trust easement for the purposes of navigation, commerce and fishing.[4] He then argues that mining, as "commerce," is a public trust activity and concludes that he "cannot be either enjoined or ejected from utilizing the property for [mining] purposes." We disagree.

In *CWC Fisheries, Inc. v. Bunker,* 755 P.2d 1115 (Alaska 1988), we adopted the public trust doctrine as enunciated in *Illinois Central R.R. Co. v. Illinois,* 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892), stating that:

> [T]idelands conveyed to private parties pursuant to class I preference rights under AS 38.05.820 were conveyed subject to the public's right to utilize those tidelands for purposes of navigation, commerce and fishery. While patent holders are free to make such use of their property as will not unreasonably interfere with these continuing public easements, they are prohibited from any general attempt to exclude the public from the property by virtue of their title.

*CWC Fisheries,* 755 P.2d at 1121.

Although we recognize that the filling of tidelands alone may not ease all public trust restrictions,[5] we reject Hayes' contention that mining is a public trust purpose. In *Illinois Central,* the United States Supreme Court declared that title to lands under navigable waters "is a title held in trust for the people of the state, that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein, freed from the obstruction or interference of private parties." 146 U.S. at 452, 13 S.Ct. at 118. This usage implies commerce in the sense of trade, traffic or transportation of goods over navigable waters, a meaning which does not include mining.

Most importantly, a mining claim is not a "public use," but rather an exclusive, depleting use of a non-renewable resource for private profit. We believe that even the most expansive interpretation of the scope of public trust easements would not include private mining enterprises.[6]

---

4.  Hayes' argument that the state did not convey to A.J. a fee simple interest in ATS 201 is devoid of merit. Under our statutes and case law, a conveyance of public trust lands pursuant to a Class I preference right "will be viewed as a *valid conveyance of title,* subject to continuing public easements...." *CWC Fisheries,* 755 P.2d at 1118 (emphasis added); *A.J. I,* 397 P.2d at 280–87; *A.J. II,* 748 P.2d at 334.

5.  *See, e.g. City of Alameda v. Todd Shipyards Corp.,* 632 F.Supp. 333, 340 (N.D.Cal.1986) ("The California courts have expressly held that filling the land alone does not ease the trust restrictions."); *City of Berkeley v. Superior Court,* 26 Cal.3d 515, 162 Cal.Rptr. 327, 339 n. 19, 606 P.2d 362, 374 n. 19 (1980) ("[T]he reclamation of tidelands subject to the public trust doctrine does not, without more, terminate the trust."), *cert. denied,* 449 U.S. 840, 101 S.Ct. 119, 66 L.Ed.2d 48 (1980).

6.  *See. e.g., Marks v. Whitney,* 6 Cal.3d 251, 98 Cal.Rptr. 790, 491 P.2d 374 (1971). The California Supreme Court observed:

> Public trust easements are traditionally defined in terms of navigation, commerce and fisheries. They have been held to include the right to fish, hunt, bathe, swim, to use for boating and general recreation purposes the navigable waters of the state, and to use the bottom of the navigable waters for anchoring,

### C. Applicability of Good Faith Doctrine

In its order granting summary judgment, the superior court concluded that Hayes failed to comply with the requirement that a locator of valuable minerals must locate a claim in good faith. The court based its finding of a lack of good faith on the fact that Hayes' staking of the claim "was based at least in part on exploratory activity conducted per lease and extension," and that Hayes "used information, obtained as [A.J.'s] lessee concerning the value and location of ore on the subject property in locating their competing claims." The court also pointed to Hayes' violation of AS 38.05.130 and 11 AAC 96.140(10) which require posting of a bond to protect the owner of the surface estate prior to mining-related activity.

■ Under Federal mining law, a locator must act in good faith for a claim to be valid. *See generally* 1 *American Law of Mining* § 31.08 (Rocky Mountain Mineral Law Foundation ed., 2d ed. 1984).[7] The good faith requirement is "an equitable concept which allows courts latitude to fill in obvious gaps in an antiquated statute which is devoid of detail." 1 *American Law of Mining* § 31.08.

■ We conclude that the court erred in applying the good faith location doctrine in this factual context. A review of cases applying the *good faith requirement* leads us to conclude that the "good faith" location doctrine should only be applied as a means of resolving conflicts between parties asserting competing mineral claims. The "good faith" doctrine is generally used to defeat the claims of a subsequent locator where the subsequent locator engaged in fraud or breached some confidential or fiduciary duty, or where the subsequent locator knew that the claim was occupied by a prior locator, or some combination of these circumstances. *See Thompson v.*

*Burk*, 2 Alaska 249 (D.Alaska 1904) (Burk, knowing of Thompson's prior claim, staked same property without Thompson's knowledge and later discovered valuable minerals thereon while on the land under a contract with Thompson to prospect it for Thompson); *Fisher v. Seymour*, 23 Colo. 542, 49 P. 30 (1897) (Seymour, while acting as agent to sell claims for Fisher, arranged to have valuable portion of claim patented to himself and others by what court called "gross fraud"); *Bagg v. New Jersey Loan Co.*, 88 Ariz. 182, 354 P.2d 40 (1960) (Bagg, while employed to supervise mining operations on employer's claims, located claim to land including portion of employer's claim and made such location with knowledge of employer's prior claim); *see also Columbia Standard Corp. v. Ranchers Exploration & Dev., Inc.*, 468 F.2d 547 (10th Cir.1972) (subsequent locator, with knowledge of claims of prior locator, staked conflicting claims without visual examination to determine extent of senior locator's prior claims), *cert. denied*, 410 U.S. 991, 93 S.Ct. 1506, 36 L.Ed.2d 190 (1973); *Ranchers Exploration and Dev. Co. v. Anaconda Co.*, 248 F.Supp. 708 (D.Utah 1965) (subsequent locator hired consulting geologist formerly employed by prior locator to provide information and to locate competing claims); *Brown v. Murphy*, 36 Cal.App.2d 171, 97 P.2d 281 (1939) (Brown, subsequent locator, located claims while on the site under agreement with Murphy, prior locator, permitting Brown to extract ore samples for royalty in anticipation of leasing claims from Murphy; Brown "well knew that any rights he had upon the premises were through [Murphy's] right and claim of possession and ownership"). Because A.J. does not assert a competing mining claim and because Hayes is not a subsequent locator, we believe that it is inappropriate to apply the good faith doctrine to invalidate Hayes' location.

standing, or other purposes.... There is growing public recognition that one of the most important public uses of the tidelands ... is the preservation of those lands in their natural state, so that they may serve as ecological units for scientific study, as open space, and as environments which provide food and habitat for birds and marine life, and which

favorably affect the scenery and climate of the area.

*Id.* 98 Cal.Rptr. at 796, 491 P.2d at 380 (citations omitted).

**7.** This requirement is applicable to Alaska mining law by virtue of AS 38.05.185(c).

We decline to apply the good faith location doctrine to the facts of this case for two additional reasons. First, the fundamental purpose of the good faith requirement is to further the speedy and orderly development of the mineral resources of the public domain. 1 *American Law of Mining* § 31.08 (1984). Its application here would defeat Hayes' location when there are no locators with prior or conflicting mining claims and thus would impede, rather than further, the development of the mineral resources owned by the state. Secondly, we do not believe that A.J. should benefit from the application of an equitable good faith doctrine when its own good faith is at issue. While it had a plausible legal argument that it was entitled to the mineral rights in ATS 201, which we ultimately rejected in *A.J. II*, the fact that it leased the mining rights to Hayes and collected royalties without revealing that its patent from the state reserved the mineral rights to the state places A.J.'s good faith in question. "Equity requires that those who seek it shall have acted fairly and without fraud or deceit as to the controversy in issue." *Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 114 n. 2 (Alaska 1990).

For the above reasons, we reverse the trial court's grant of summary judgment in favor of A.J. and remand for a determination of what rights, if any, Hayes has acquired by staking and recording these claims.[8]

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

[8] It is necessary to remand on this issue because it was not properly presented to the trial court or adequately briefed on appeal. Many of the pertinent statutes and regulations, as well as the applicable case law, have not been cited or discussed. On the record presented, we cannot determine which DNR internal procedures govern cases, such as this, where a third person seeks to establish a mining claim on private property in which the state holds reserved mineral rights. Because this issue depends, in large part, on the interpretation of state statutes and regulations governing mining claims, and because the state has a clear interest in this issue, we advise the parties to notify the State Attorney General's office so that the state will have an opportunity to set forth its position.