**Henry WASSINK and Consuelo Wassink, Appellants,**

v.

**Tom HAWKINS, Director, Division of Land and Water Management, Alaska Department of Natural Resources, Appellee.**

No. S–4457.

Supreme Court of Alaska.

Sept. 24, 1993.

Joe P. Josephson, Anchorage, for appellants.

Robert C. Nauheim, Asst. Atty. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J. and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This is the second time this case is before us. The Wassinks contend that summary judgment was again improperly entered in favor of Tom Hawkins, Director, Division of Land and Water Management, Alaska Department of Natural Resources. The judgment terminated the Wassink's agricultural interest in a Point Mackenzie dairy farm. The judgment allowed the Wassinks sixty days to remove improvements.[1] The Wassinks contend that genuine issues of material fact continue to exist regarding affirmative defenses to Hawkins' action. We agree, and therefore reverse.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Most of the facts relevant to this appeal are set forth in *Wassink v. Hawkins,* 763 P.2d 971, 972–73 (Alaska 1988). In September 1982 Melody Wassink, the daughter of Harry Wassink and Consuelo Wassink, won a state held lottery enabling her to purchase a 474.22 acre dairy parcel at Point MacKenzie. The price of the parcel was $58,820, less a resident land discount of $17,646. A $2,058 down payment was made, the balance to be paid over twenty-one years. In December 1982 Melody entered into a $119,421 clearing loan with the Agricultural Revolving Loan Fund (ARLF).

Early in 1983 Harry Wassink purchased some $80,000 worth of farm and construction machinery. However, it was not until November 1984 that the Wassinks obtained an interest in the parcel when Melody assigned the property to them. The Wassinks assumed the clearing loan in December 1984.

---

1. The suit giving rise to this appeal does not adjudicate any obligation the Wassinks may have to the Agricultural Revolving Loan Fund (ARLF).

In May 1985 the Wassinks applied for and were approved for $522,942 in construction loans for the purpose of constructing a dairy barn on the parcel. In July 1986 they were approved for a cow loan with the condition that the barn and equipment would be ready before cows would be ordered.[2]

In August the Wassinks requested and received a sixty day extension of the cow loan to enable them to complete the barn. On August 21 the parcel was inspected and found to be less than 60% completed. On September 25 the parcel was again inspected. The barn was 75-80% completed and was not ready for cows. After September 25 no additional construction funds were to be released.

On October 3 the parcel was inspected by inspectors for the clearing loans and land sale contracts for the Point MacKenzie project. The inspectors were told the dairy was two weeks from completion. On October 16 the inspectors returned and found the dairy was still approximately two weeks from completion. The Wassinks decided not to finish the barn, so they claim, after the state refused to disburse the proceeds from the cow loan and after the state had repudiated the extensions.

In *Wassink* we reversed the superior court's summary judgment in favor of Hawkins and remanded the case for further proceedings. *Id.* at 975. We held enforceable a stipulation between the Wassinks and Hawkins in which the Wassinks agreed to waive any and all defenses to Hawkins' action to terminate the land sale contract, as to defenses which may have existed prior to the waiver. *Id.* However, we concluded that facts alleged regarding the state's activities after the date of the 1986 stipulation were sufficient to raise genuine issues of material fact regarding the availability of the affirmative defenses of waiver, frustration, and estoppel. *Id.*

In May 1989, six months after remand, the Wassinks' attorney withdrew from the case. No further proceedings occurred until May 1990 when the superior court issued a Notice and Order of Dismissal. Hawkins announced his intent to proceed and in June filed a new motion for summary judgment, supported by the affidavits of several state employees.

Hawkins claims he sent a copy of the motion for summary judgment to the Wassinks by regular mail. The Wassinks deny having received it. They claim they were unaware until August 29, 1990, that the motion was pending. It was discovered at that time by an attorney, Joe Josephson, who represented them in the related case of *State v. Cange*, 3AN-88-0056. On August 30, Mr. Josephson began preparing an appearance and a motion for an extension of time to respond. He informed the law clerk for Superior Court Judge J. Justin Ripley that the motion would be delivered that morning. Sometime on August 30 Judge Ripley entered summary judgment in favor of Hawkins.

The court denied the Wassinks' motion to vacate the summary judgment and the Wassinks' later motion to add a counterclaim to the case, raising an issue of clouded title due to the land's status as Mental Health Trust Lands. After the court entered final judgment, the Wassinks again appealed.

## II. *HAWKINS IS NOT ENTITLED TO SUMMARY JUDGMENT*

*Wassink* involved Hawkins' attempted termination of the land sale contract for the Wassink's dairy farm for failure to comply with development requirements by the deadlines established by a 1986 stipulation between the parties.

In *Wassink*, we determined that the following alleged facts, supported by evidence in the record, were sufficient to raise genuine issues of material fact regarding the

2. Wassink claims he was told in late October that the cow loan check would not be released until he obtained a Grade A dairy permit. This would put Wassink in a "Catch 22" position, since he could not get a permit until he had cows milking, and he could not get cows to be milked without the permit. The loan examiner claims no Grade A dairy permit was required. The loan was not distributed because the dairy was not ready for cows.

affirmative defenses of waiver, estoppel and frustration:

> In June 1986 the ARLF re-approved the Wassinks' cow loan. In July 1986 the Wassinks submitted permit applications (apparently for the Grade A facility classification) to the State's Department of Environmental Conservation (DEC). In August 1986 Heim sent the letter purportedly altering the conditions of the stipulation. On or about the second week of October 1986, the Wassinks were notified that the loan check was in. When the Wassinks went to pick up the check, they were told by the Division of Agriculture that the money would not be released until the barn was completed and a Grade A dairy permit obtained. According to the Wassinks a Grade A permit cannot be obtained until there are milking cows on the premises since the milk product must be tested as part of the permitting process. These two conditions, if enforced, would place the Wassinks in a "Catch–22" situation. According to the Wassinks, historically the state has granted cow loans without the prerequisite of an interim permit from DEC.

763 P.2d at 975.

According to the Wassinks, the law of the case after *Wassink* is that genuine issues of material fact existed which preclude summary judgment. We agree. We have reviewed the record in detail. Nothing has changed since our decision in *Wassink*. The State has provided no new evidence which would support a different result in the present case. Genuine issues of material fact regarding waiver, frustration, and estoppel preclude summary judgment.

### III. CONCLUSION

The decision of the trial court is REVERSED and the case is REMANDED once again for further proceedings consistent with this opinion.