Donna M. BARR, Appellant,

v.

GOLDOME REALTY CREDIT CORPORATION, n/k/a Nationsbanc Mortgage Corporation, Appellee.

No. S–9413.

Supreme Court of Alaska.

May 10, 2002.

**39.** 816 P.2d 197, 199 (Alaska 1991) (citation omitted).

**40.** *See Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985).

Rebecca S. Copeland, Koval & Featherly, P.C., Anchorage, for Appellant.

Richard Ullstrom, Routh Crabtree, APC, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Donna Barr appeals the superior court's grant of partial summary judgment to Nationsbanc Mortgage Corporation on Nationsbanc's claim for possession of real property occupied by Barr and Barr's counterclaim for damages. Barr argues that Nationsbanc did not apply surplus escrow funds to Barr's monthly note obligations according to the terms of the deed of trust, resulting in improper foreclosure on the property and damage to Barr. Because we agree with Barr that genuine issues of material fact remain, we reverse the superior court's partial grant of summary judgment to Nationsbanc, vacate its findings, and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Donna Barr assumed ownership of the property at 11840 Mary Street in Anchorage subject to a deed of trust. Nationsbanc, as beneficiary, initiated foreclosure proceedings against the property in January 1998 because it believed the underlying note was in default. A notice of default was then recorded and served upon Barr. Barr filed for Chapter 13 bankruptcy in February 1998. The foreclosure sale was held in June 1998 after the bankruptcy court lifted the bankruptcy stay;[1] Nationsbanc was the buyer at the foreclosure sale.

Nationsbanc also filed a complaint against Barr in June 1998 for forcible entry and detainer to evict Barr from the property, and

---

1. The bankruptcy court lifted the stay after determining that Barr had violated the stay's conditions. The court explained that Barr's reasoning for not delivering her payment to local counsel in June 1998, as required by a May 1998 order of the bankruptcy court, was "vague and unsatisfactory."

for recovery of fair rental value of the premises and any damages Barr might have caused to the property. In her answer to the complaint, Barr denied that Nationsbanc was properly vested with title to the property. Barr alleged that Nationsbanc's declaration of default was improper because Nationsbanc knowingly failed to credit funds in Barr's note account that would have cured any deficiency. Barr counterclaimed, asserting that these acts caused her to suffer damages exceeding $150,000, and requested that punitive damages be assessed against Nationsbanc.

After discovery, Nationsbanc moved for partial summary judgment seeking both a judgment in its favor with respect to its right to possess the property and dismissal of Barr's counterclaim. Among other things, the motion was supported by Barr's discovery answers in which she admitted she had not made her monthly note payments in the three months before the foreclosure—November and December 1997, and January 1998.

Barr opposed Nationsbanc's motion, arguing that no default occurred because an overpayment on the loan and a surplus in the escrow account should have been credited to some or all of Barr's monthly note obligations for November and December 1997 and January 1998.[2] In support of her opposition, Barr submitted her own affidavit and an affidavit from Sherry Whah. Whah affied that she was an experienced accountant and that based on her review of Barr's payment history, she had determined that Barr had made excess payments, exceeding $7,465, on the note.

Nationsbanc's supplemental reply argued that the records Barr submitted to support Whah's affidavit were inadmissible hearsay, and that they actually supported Nationsbanc by showing that the foreclosure was proper. Four days before the hearing on Nationsbanc's motion for partial summary judgment, Barr submitted her own supplemental affidavit in which she described her

note payment practices and swore that Nationsbanc had never refunded any excess escrow reserves. Barr supported her affidavit with a package of documents that were intended to demonstrate the inconsistency of Nationsbanc's record-keeping practices, the failure of Nationsbanc to refund any escrow reserves, and the failure of Nationsbanc to credit Barr's account. At an August 1999 hearing Nationsbanc objected to the documents because it claimed they were submitted too late to permit a reply, were not produced in discovery, and were unauthenticated and inadmissible hearsay.

In September 1999 the superior court granted partial summary judgment to Nationsbanc, dismissed Barr's counterclaim with prejudice, and determined that—under Alaska Rule of Civil Procedure 54(b)—there was no need to further consider the issues Nationsbanc raised at the hearing. The superior court's findings of fact and conclusions of law appear to have been adopted in toto from the proposed findings and conclusions submitted by Nationsbanc at the court's direction. The court denied Barr's motion for reconsideration.

Barr appeals.

## III. DISCUSSION

### A. Standard of Review

 This court reviews a grant of summary judgment de novo and affirms only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[3] In making this determination, we draw all reasonable inferences in favor of the non-moving party.[4]

### B. Granting Summary Judgment to Nationsbanc Was Error Because There Remained Factual Disputes Whether the Loan Was Current and Whether an Overpayment Was Available to Apply to Barr's Account.

 Barr's affirmative defense contends that Nationsbanc "failed to properly give

---

**2.** Nationsbanc moved to strike Barr's opposition on grounds that it was not signed by her counsel of record and that it relied upon matters not disclosed in discovery despite specific requests by Nationsbanc. This motion was denied.

**3.** *Moore v. Allstate Ins. Co.,* 995 P.2d 231, 233 (Alaska 2000) (citations omitted).

**4.** *Id.*

credit" on her account and that she "was not in arrears on her payments per the Deed of Trust." On appeal she explains that she had "overpaid her account and excess funds were in the escrow account at the time the foreclosure was commenced, which funds would have satisfied the default." Barr argues that the alleged excess escrow funds, which were in the "possession and control" of Nationsbanc, should have been applied to avoid the default.

There is a genuine dispute of material fact whether Barr's loan was current and whether there was a surplus in her escrow account when default was declared.

Barr affied that "a credit balance in excess of $7,465.00" existed in her account on the date foreclosure was initiated. To support this assertion, and to overcome a motion to strike by Nationsbanc, Barr submitted copies of the documents on which she relied in arriving at the $7,465 figure. These documents recorded monthly payments on the loan and the date through which Barr alleged each payment rendered the loan current. The documents showed that in May 1997 the loan was "paid thru" that month only; no payments were made in June or July 1997; and payments in the amount of the monthly obligation were made in August, September, and October 1997. The documents do not record escrow payments or an escrow balance for any period. Thus, Barr's affidavit is not sufficient on its own to create a material fact dispute.

However, Barr's claim regarding the alleged surplus is supported by Whah's affidavit, which stated that "[b]ased on the accounting undertaken by Affiant, it appears that the discrepancy in the numbers between Nationsbanc and Affiant relate primarily to late fees, payments and distributions from the escrow account, and uncredited payments over the term of the mortgage."

■ A genuine issue of fact exists when the evidence, viewed in the light most favorable to the nonmoving party, is such that reasonable jurors could differ in their judgment on that issue.[5] Although Nationsbanc disputes Barr's claim, the evidence presented—when read in the light most favorable to Barr—could permit a finding that there was an escrow surplus in Barr's account in October 1997. Whah affied that "through January 1998, the month in which the foreclosure was initiated by Nationsbanc, ... Barr had made excess payments and overpaid the mortgage with Nationsbanc in prior years in excess of $7,465.00," and that "Barr's loan was not in default at the time the foreclosure was initiated by Nationsbanc." If there was an account excess three months after Barr last made a payment, a factfinder could permissibly infer that the excess also existed when she made her last payment in October.

■ Nationsbanc questions the admissibility of the documents Whah relies upon in reaching her conclusions. But Barr has not sought to establish that the documents relied upon by Whah are themselves admissible in evidence, only that they are a permissible basis for Whah's expert opinions. Alaska Evidence Rule 703 provides that facts or data relied upon by experts in forming opinions "need not be admissible in evidence, but must be of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."[6] Nationsbanc argues that Barr cannot establish that all of the documents meet this standard because Whah admitted that she only attached to her affidavit "some of the documents upon which she relied in forming her opinion."[7] But Whah affied that many of the records she relied upon were provided to

**5.** *Bliss v. Bobich,* 971 P.2d 141, 145 n. 4 (Alaska 1998) (citation omitted); *see also Schneider v. Pay'N Save Corp.*, 723 P.2d 619, 623 (Alaska 1986) (stating material issue of fact exists where reasonable jurors could disagree in resolving factual issues presented by moving papers) (citation omitted).

**6.** *See also Norris v. Gatts,* 738 P.2d 344, 349–50 (Alaska 1987) (stating expert witness entitled to

rely upon inadmissible evidence meeting "reasonable reliance" element of Rule 703).

**7.** Nationsbanc notes that Alaska Civil Rule 56(e) requires that "[s]worn or certified copies of *all* papers or parts thereof referred to in an affidavit [opposing summary judgment] shall be attached thereto or served therewith." (Emphasis added.)

Barr by Nationsbanc "and are certainly in [Nationsbanc's] possession and control" although they were not attached to Whah's affidavit. Without a more convincing showing by Nationsbanc that the documents Whah reviewed were so unreliable as to preclude an expert from forming an opinion in reliance on them, we conclude that for purposes of summary judgment, Whah's affidavit was admissible evidence.

Nationsbanc argues that the language of both the deed of trust and regulations of the U.S. Department of Housing and Urban Development (HUD) prevented it from applying the escrow surplus, even if it existed, to future payments. Nationsbanc argues that by failing to make her payments in at least November 1997 through January 1998, Barr's loan was not current.[8] Nationsbanc correctly notes that an escrow surplus may be applied to future payments only if the loan is current.[9] As noted above, however, the Whah affidavit contained evidence both that the loan was current and that Barr had an escrow surplus in January 1998.[10] Barr argues that since the loan was current when the foreclosure was commenced, Nationsbanc should have "applied [the surplus] to principal and interest payment[s][as] was the practice of Nationsbanc and its predecessors in interest." Barr's assertion in her affidavit that a surplus existed in January 1998, along with Whah's affidavit, creates a genuine issue of material fact as to whether the loan was current in October 1997.

■ HUD regulations require a refund to the borrower of any surplus greater than $50.[11] When the regulations are read in conjunction with the deed of trust, it would still be permissible for Barr to request that any surplus be applied to principal and interest payments. A HUD regulation stating that the surplus "shall ... [be] refund[ed] ... to the borrower"[12] does not, by itself, forbid the borrower from requesting that the refund be redirected to principal or interest payments. Indeed, paragraph 4 of the deed of trust allows for this possibility. It states that any "excess, if the loan is current, at the option of the Trustor [Barr], shall be credited on subsequent payments to be made by the Trustor, or refunded to the Trustor." Barr argues that it was Nationsbanc's prior practice to apply the surplus in this manner. The same factual inferences favorable to Barr that create a genuine issue of material fact as to whether the loan was current in October 1997 also create a genuine issue of material fact as to whether Nationsbanc could have applied any escrow surplus to Barr's monthly payments in November and December 1997 and January 1998. Accordingly, we conclude that Nationsbanc has failed to meet its burden of disproving Barr's affirmative defense.[13] It was therefore not entitled to summary judgment.

**C. Dismissing Barr's Counterclaim Was Error Because There Was a Factual Dispute Whether Nationsbanc's Foreclosure Was Proper.**

■ Barr argues that the trial court wrongfully dismissed her counterclaim for damages caused by Nationsbanc's purportedly improper foreclosure. Like Barr's affirmative defense, her counterclaim focuses on

8. 24 Code of Federal Regulations (C.F.R.) § 3500.17(f)(2)(ii) (2000) states:

 A borrower is current if the servicer receives the borrower's payments within 30 days of the payment due date. If the servicer does not receive the borrower's payment within 30 days of the payment due date, then the servicer may retain the surplus in the escrow account pursuant to the terms of the mortgage loan documents.

9. Paragraph 4 of the deed of trust states:

 If the total of the payments made [under the note plus taxes and insurance] exceed the amount of payments actually made by Beneficiary for ground rents, taxes or assessments, of (sic) insurance premiums, as the case may be,

such excess, if the loan is current, at the option of the Trustor, shall be credited on subsequent payments to be made by the Trustor, or refunded to the Trustor.

10. Even if the loan was not current, the beneficiary could not simply keep the escrow surplus without accounting for it.

11. 24 C.F.R. § 3500.17(f)(2)(i) (2000).

12. *Id.*

13. *Wassink v. Hawkins*, 859 P.2d 712, 713–14 (Alaska 1993) (reversing grant of summary judgment where genuine issues of material fact exist regarding affirmative defenses).

whether a surplus existed, and if it did, whether it was available to be applied to the balance owed on the property. Because Nationsbanc did not conclusively show that a surplus did not exist, it has failed to meet its burden in disproving Barr's damage claim. Hence, the genuine factual dispute that requires us to reverse Nationsbanc's summary judgment motion also requires us to reverse the dismissal of Barr's counterclaim.

### D. We Vacate the Superior Court's Findings of Fact and Conclusions of Law.

Barr argues that the superior court erred by adopting Nationsbanc's proposed findings and conclusions in toto without carefully considering their content. Barr also alleges that those findings and conclusions contained multiple errors. Barr is correct to the extent that any of the findings or conclusions go to issues which remain in genuine dispute. On the other hand, we recognize that many of the findings and conclusions may not have been erroneously entered and may stand alone, regardless of the genuine factual dispute discussed in Part III.B. But there is no reason to decide which findings and conclusions those might be because the parties have not briefed that proposition and because there is no present dispute about the validity of the individual findings and conclusions beyond the narrow issues we have discussed above. Instead we simply vacate the superior court's findings of fact and conclusions of law because we have determined that there are genuine factual disputes that are material to the issues discussed above.

## IV. CONCLUSION

Because there are genuine issues of material fact about the extent or existence of a surplus that could be credited to Barr's account, we REVERSE the partial summary judgment entered for Nationsbanc, VACATE the findings of fact and conclusions of law, and REMAND for further proceedings consistent with this opinion.