**TRUSTEES FOR ALASKA, City of Kaktovik, American Wilderness Alliance, Northern Alaska Environmental Center, Alaska Wildlife Alliance, The Sierra Club, The Wilderness Society, Alaska Center for the Environment, Appellants,**

v.

**STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES; Judy Brady, Commissioner, State of Alaska Department of Natural Resources, and James Eason, Director, Division of Oil and Gas, State of Alaska, Department of Natural Resources, Appellees.**

**Arco Alaska, Inc., Chevron U.S.A., Inc., Phillips Petroleum Co., and Standard Alaska Petroleum Co., Intervenor–Appellees.**

No. S–5275.

Supreme Court of Alaska.

Dec. 23, 1993.

---

Peter Van Tuyn, Trustees for Alaska, Anchorage, for appellants.

Kyle W. Parker, Asst. Atty. Gen., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee State of Alaska.

Carl J.D. Bauman and Clyde E. Sniffen, Jr., Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for intervenor-appellees.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

Seven environmental groups [1] and the City of Kaktovik ("Trustees") challenged the State's sale of Oil and Gas Lease 55 (Sale 55). They contend that the Department of Natural Resources (DNR) failed to consider several issues when it determined that the sale was in the "best interests" of Alaska. Arco Alaska, Inc., Chevron U.S.A., Inc., Phillips Petroleum Co., and Standard Alaska Petroleum Co. intervened.

The superior court affirmed DNR's best-interest determination as well as its decision to proceed with Sale 55. This appeal followed. We reverse.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In Sale 55, the State offered oil and gas exploration and development rights to 201,707 acres of offshore state land in the Beaufort Sea near Demarcation Point. Demarcation Point is located along the northern coast of the Arctic National Wildlife Refuge

---

**1.** The groups are Trustees for Alaska, American Wilderness Alliance, Northern Alaska Environmental Center, Alaska Wildlife Alliance, Sierra Club, Wilderness Society, the Alaska Center for the Environment.

(ANWR) in northeast Alaska. *See* Appendix A attached.

Pursuant to Alaska law, DNR can lease state lands only if it makes "a written finding that the interests of the State will be best served." AS 38.05.035(e); *see also Trustees for Alaska v. State, DNR*, 795 P.2d 805, 809 (Alaska 1990). In order to comply with this requirement, DNR began the lengthy administrative determination process in August 1983.

In February 1988 DNR issued a preliminary best-interest finding, tentatively concluding that Sale 55 was in the best interests of Alaska. After this preliminary finding, DNR solicited additional comments and analysis from the public, the oil industry, and state and federal agencies. At this time, Trustees submitted oral and written comments critical of DNR's conclusion, and asked for a final determination that Sale 55 was not in Alaska's best interests. On April 25, 1988, DNR issued its final finding, concluding that the potential benefits of the sale outweighed the possible adverse impacts, and that the sale was in the best interests of the State.

Trustees filed a motion for reconsideration which DNR denied. Trustees then appealed to the superior court. During the briefing before the superior court, we decided *Trustees for Alaska v. State, DNR*, 795 P.2d 805 (Alaska 1990) (*Camden Bay* ), which involved a challenge to the State's Oil and Gas Lease Sale 50. In *Camden Bay*, we concluded that the DNR should have analyzed likely methods and risks of transporting oil to shore, but failed to do so. *Id.* at 810–11. Because of *Camden Bay*'s relevance to the present case, the superior court allowed supplemental briefing to address any possible effect the decision might have on the issues under consideration. On January 24, 1991, the superior court issued its memorandum and decision affirming Sale 55. Among other things, the superior court found that Trustees had abandoned any arguments regarding transportation of oil because they did not include the

issue in their points on appeal or argue the issue in their opening brief. The superior court denied Trustees' motion for rehearing. This appeal followed.

## II.  DISCUSSION

Trustees challenge DNR's finding that Sale 55 is in the State's best interests on two grounds: (1) DNR failed to consider the environmental risks of transporting oil from the lease area to market; and (2) DNR failed to consider the impact of oil operations within the lease area on the Porcupine Caribou herd and on subsistence users of this herd. In response, Appellees contend that Trustees waived and abandoned the transportation issue, and furthermore, that DNR did consider these two issues. Appellees therefore contend that DNR's decision was not arbitrary.

■ DNR's best-interest determination is subject to deferential review by this court.[2] Since the determination "involve[s] complex subject matter or fundamental policy formulations," this court reviews the decision "only to the extent necessary to ascertain whether the decision has a 'reasonable basis.' " *Camden Bay*, 795 P.2d at 809 (quoting *Hammond v. North Slope Borough*, 645 P.2d 750, 758 (Alaska 1982)). Nevertheless, this court must ensure that DNR has taken a "hard look" at the salient problems and has genuinely engaged in reasoned decision making. *Alaska Survival v. State*, 723 P.2d 1281, 1287 (Alaska 1986). A decision will be regarded as arbitrary "where an agency fails to consider an important factor in making its decision." *Camden Bay*, 795 P.2d at 809.

### A.  THE TRANSPORTATION ISSUE

1.  Trustees Did Not Waive or Abandon the Transportation Issue.

■ Appellees argue that this court should not address the transportation issue because (1) Trustees waived the issue by not raising it during the administrative process, and (2) Trustees abandoned the issue by not including it in their points on appeal, and by failing

---

**2.** Since the superior court acted as an intermediate court of appeal, we give no deference to the lower court's decision. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903

(Alaska 1987). "Instead, we independently scrutinize directly the merits of the administrative determination." *Id.* (citations omitted).

to brief the issue before the superior court. Trustees respond that they did raise the issue at the administrative level, and that they properly preserved the issue before the superior court.

█ Appellees are correct that a party must raise an issue during the administrative proceedings to preserve the issue for appeal. The United States Supreme Court has stated that it is "incumbent upon intervenors who wish to participate [in agency proceedings] to structure their participation so that it is meaningful, so that it alerts the agency to the intervenors' position and contentions." *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 553, 98 S.Ct. 1197, 1216, 55 L.Ed.2d 460 (1978). Review of the record, however, demonstrates that Trustees did raise the transportation issue before DNR in their comments on the preliminary best-interest finding, and in their motion for reconsideration. Therefore, Trustees did not waive the transportation issue.

The question whether Trustees abandoned the transportation issue on appeal to the superior court is a closer one. In examining this question, we focus on three aspects of the litigation: (1) Trustees' framing of their points on appeal, (2) the extent of Trustees' briefing on the transportation issue before the superior court, and (3) the superior court's request for supplemental briefing following our *Camden Bay* decision.

Appellate Rule 210(e) provides in part: "At the time of filing his notice of appeal, the appellant shall serve and file with this designation a concise statement of the points on which he intends to rely on the appeal. The appellate court will consider nothing but the points so stated." Alaska R.App.P. 210(e). In their points on appeal, Trustees alleged:

**3.** Apparently, Trustees decided not to fully brief the issue because the same court had previously rejected the argument in the *Camden Bay* case. In a footnote to their opening brief, Trustees wrote:

> Since these issues [including the transportation issue] are pending before the Supreme Court [in *Camden Bay* ], Appellants are not re-addressing those issues in the same superior court which considered them previously. Nonetheless, Appellants reserve the right to address at a later date any determinations

DNR's decision to proceed with Lease Sale 55 without providing the public with vital information on the scale of operations and infrastructure which will be required for a moderate to high level petroleum development operation, was arbitrary and capricious and without support in the administrative record. Specifically, DNR failed to follow standard analysis procedures for resource estimates; strategies used to explore, develop and produce and *transport* potential petroleum resources.

. . . .

DNR's decision to proceed with Sale 55 without adequately considering or identifying the types and locations of facilities "not located in ANWR" which would be used to facilitate the development of Demarcation Point was arbitrary. . . .

We find that this statement is sufficient to preserve the issue as required by Rule 210(e).

Nevertheless, Appellees argue that Trustees abandoned the transportation issue by failing to brief it before the superior court. *Kodiak Electric Ass'n v. Delaval Turbine, Inc.*, 694 P.2d 150, 153 n. 4 (Alaska 1984) (even though the issue was included in appellant's points on appeal statement, the issue was abandoned because appellant failed to adequately brief it). We disagree. Although Trustees did not brief the issue adequately in their opening brief,[3] they briefed the issue in response to the superior court's request for supplemental briefing on the *Camden Bay* decision.

In fact, *all* parties briefed the transportation issue at this stage in the litigation. Given the extent of this briefing, Appellees cannot argue that the transportation issue was not adequately briefed, or that they will be prejudiced by our consideration of the issue.

made by the Supreme Court in *Camden Bay* which have a bearing on Lease Sale 55.

While we generally support efforts to conserve judicial resources, we caution against this type of appellate practice. Even if Trustees thought they would lose on the issue, they were obligated to raise and brief the issue if only to preserve it for appeal. *See, e.g., Braun v. Alaska Commercial Fishing & Agric. Bank*, 816 P.2d 140, 145 (Alaska 1991) (issues insufficiently briefed are deemed abandoned).

The superior court was correct to take judicial notice of the *Camden Bay* decision, and to request supplemental briefing as to its effect on this case. However, the superior court abused its discretion by refusing to address the transportation issue on the grounds that it was not adequately briefed.

Because the issue was not abandoned, we now turn to the question whether DNR failed to consider the methods and risks of transporting oil from the Sale 55 area.

### 2. DNR Erred in Failing to Consider the Transportation Issue.

■ Alaska Statute 38.05.035(e) grants DNR the power to sell or lease state lands upon a written finding that "the interests of the state will be best served" by the disposition. AS 38.05.035(e). The written findings must set out the law and facts upon which DNR bases its conclusions, and must be made available to the public at least twenty-one days before the disposition. *Id.*

In *Camden Bay,* this court rejected DNR's best-interest finding for Sale 50 because it failed to consider an important factor—"the unique risks presented by the oil transportation methods that would be necessary if the legal status of ANWR remains unchanged." 795 P.2d at 811. Trustees argue that DNR's best-interest finding in this case is deficient for the same reason. Trustees contend that the Finding "is utterly bereft of any recognition of transportation as an issue, let alone any discussion of the environmental risks of transportation and how those risks affect the overall 'best interest' determination."

In response, DNR claims that the record demonstrates "a careful consideration of the transportation issues." DNR argues: (1) its drafting of several lease terms indicates its acknowledgment of environmental risks associated with different transport methods; (2) its cumulative effects analysis considers transportation issues by acknowledging that a complete assessment of the effects of the lease sale is impossible until actual discoveries are made; and (3) it relied on a number of state and federal studies concerning oil transportation for a nearby federal oil lease. In addition, Intervenor–Appellees argue that DNR took a "hard look" at the transporta-

tion issue since it determined that development of Sale 55 might be economically feasible, i.e., that a discovery of a large enough volume of oil would make it "possible to build the necessary infrastructure to transport oil safely from the Sale 55 area to Pump Station No. 1 of the Trans–Alaska Pipeline System."

Given the remote area of Sale 55, and the fact that ANWR cannot be used as a site for transportation facilities, it was incumbent upon DNR to consider and weigh the methods and associated risks of transporting oil to available onshore facilities. In *Camden Bay,* we stated:

> [Transportation] facilities are unquestionably a vital part of the development of the sale area for oil production and thus are important factors in the decision to lease the sale area. They would seem to present unique environmental risks. Yet the Finding is remarkable in that—as detailed as it is on other subjects—it fails to mention facilities of this magnitude at all [such as undersea pipelines as long as 50 miles], much less examine the critical question of whether they are safe.

795 P.2d at 810–11. This language forewarns that transportation is an important factor which DNR must consider when making its best-interest finding on a proposed lease sale.

Review of the record, however, indicates that DNR did not take a hard look at the transportation issue in making its best-interest determination for Sale 55. For example, the Finding concludes that offshore development would be "feasible" without use of ANWR, but does not discuss how the oil would be transported or what risks these methods would pose. A finding or assertion that development is economically feasible is not the same as a finding that the sale is in the State's best interests. DNR must consider the "social, cultural and environmental impacts on the state from oil production." *State, DNR v. Arctic Slope Regional Corp.,* 834 P.2d 134, 143 (Alaska 1991).

In fact, the Finding for Sale 55 is remarkably similar to the Sale 50 Finding that was rejected by this court in *Camden Bay.* Much of the Finding appears to have been

copied—without alteration—from the Sale 50 Finding. More importantly, the Sale 55 Finding deals with transportation issues in a similar cursory manner.

Given the similarity between the Sale 50 and Sale 55 locations,[4] as well as the two Findings' treatment of the transportation issue, this court's decision in *Camden Bay* is controlling.[5] The best-interest Finding for Sale 55 failed to adequately address the methods and risks of transporting oil from the sale area to market. Accordingly, we reverse the decision of the superior court, and remand the case to DNR for a supplemental finding addressing this issue.

## B. THE PORCUPINE CARIBOU HERD

■ Trustees further argue that the Porcupine Caribou Herd is susceptible to adverse impacts from oil and gas development off the shore of ANWR, and that DNR must consider this impact in making its best-interest determination.[6] Trustees contend that the caribou use areas within, and immediately adjacent to, the Sale 55 area as calving grounds and for insect relief. Trustees raise concerns that oil development may cause the caribou to avoid this important area. Further, caribou may be subject to oil spills. Accordingly, Trustees argue that DNR's best-interest Finding was deficient because it failed to consider the impact of Sale 55 on the caribou herd.

In response, DNR argues that it adequately addressed any impact development would have on the herd. DNR notes that Sale 55 is an offshore lease sale, and that Trustees have presented no evidence that *"offshore activities themselves* can interfere with cari-

bou *onshore* in ANWR." Further, DNR contends that in formulating its final finding, it "considered volumes of information on caribou including general biological information, information regarding caribou in ANWR, and information concerning the minimal effects of current onshore development in Prudhoe Bay on the caribou herds." Because of this, DNR concludes that it adequately considered any potential effects of the sale on the caribou herd.

Despite DNR's contentions that it "considered volumes of information on caribou," the Finding does not suggest this level of consideration. In contrast to DNR's extensive discussion detailing the effects of the sale on whales, seals, polar bears, fish and birds, the Finding simply does not discuss the effects on caribou. DNR is required to take a "hard look" at the salient problems involved with a lease sale, and must engage in reasoned decision making. *Camden Bay*, 795 P.2d at 809. DNR's Finding indicates that it did not give the same level of consideration to the caribou herd that it gave to other wildlife.

In fact, DNR's Finding consists of little more than an assumption that, since Sale 55 is an offshore oil lease, it will not affect ANWR or the caribou that use ANWR.[7] DNR's Finding states:

> Sale 55 thus should not have a direct effect on ANWR lands themselves, although exploration and production activity within the sale area may be visible from ANWR.

Although DNR asserts that development "should not" affect ANWR or the caribou that utilize ANWR, DNR has made no finding to this effect. Rather, it has simply made the unsupported assumption that off-

---

4. Remarkably, the Sale 55 area is considerably farther away from conventional land-based transportation facilities on the North Slope (80 miles) than the Camden Bay sale area (50 miles).

5. DNR attempts to limit the precedential value of *Camden Bay* by suggesting that this court's holding as to the transportation issue was "perhaps" a result of incomplete briefing.

6. Trustees argue that the herd is important to the State because (1) it has been recognized by the United States and Canada as "a unique and irreplaceable resource of great value," (2) many

Alaska Natives utilize the herd for subsistence purposes, and (3) the herd is used for recreation, aesthetic and sport hunting purposes by Alaskans.

7. If DNR had given this issue the same level of attention in its Finding that it gave the issue in the briefing before this court and the superior court, the Finding may have been sufficient. Nevertheless, the best-interest determination required by statute must take place before the lease decision is made, not as an after-the-fact exercise.

shore development cannot affect caribou.[8] This approach is evident in the following language of the Finding:

> [W]hile the Department recognizes the intent behind the creation of ANWR, the department does not believe it is necessary to establish yet another undeveloped area, or buffer zone, around the refuge to achieve an acceptable level of protection for fish and wildlife within ANWR. Regulatory agencies have designed lease terms, permit requirements and field monitoring to control industry exploration and production activities. The protection of ANWR lands will be a consideration when granting approval of design, siting and construction of exploration and production facilities.... [T]he department does not expect significant or permanent degradation to refuge wildlife, the environment, or the wilderness character of the refuge to occur.

Although DNR attempts to argue that it "carefully considered caribou-related issues," the Finding language indicates otherwise. What DNR is really arguing is that offshore development cannot affect onshore caribou, i.e., that the sale's effect on the Porcupine Caribou Herd does not represent a "salient problem" for purposes of AS 38.05.035(e). *See Camden Bay,* 795 P.2d at 809 (DNR must take a hard look at any salient prob-

lems associated with sale). This argument is equally unpersuasive. The caribou herd is an important resource for the State of Alaska and the Natives that rely on the caribou for subsistence. Since the State has a substantial interest in the continued health and viability of the herd, the impact of the sale on the herd is an important factor which DNR must consider when making its best-interest determination.

DNR failed to take a hard look at the impact of Sale 55 on the Porcupine Caribou Herd, and on the subsistence users of this herd. Accordingly, we reverse the superior court, and remand the case to DNR for a supplemental finding addressing these issues.

## III. *CONCLUSION*

Trustees did not abandon or waive the transportation issue before the superior court. Since DNR failed to adequately consider the issue in making its best-interest finding, we REVERSE the decision of the superior court and REMAND the case for a supplemental finding.

DNR failed to consider the effect of Sale 55 on the "important factor" of the Porcupine Caribou Herd. Accordingly, we also REVERSE and REMAND for a consideration of this issue.

---

**8.** Although DNR did not find it necessary to study the impact of the sale on adjacent ANWR lands, it did think it appropriate to cite ANWR's petroleum potential as a factor supporting its decision to lease the Sale 55 area. The Finding states:

> Petroleum industry interest in the [surrounding] region is significant.... Members of the oil industry as well as the U.S. Department of the Interior and State of Alaska have assessed the petroleum potential of the coastal plain of the Arctic National Wildlife Refuge (ANWR)

adjacent to the sale areas and indicated that it may be the most prospective unexplored region in North America. These facts in conjunction with the imminent decline of production from other North Slope oil fields ... support the decision to lease now state lands in Sale 55.

DNR cannot use the surrounding ANWR lands as a factor justifying development, and at the same time refuse to consider the impact of the sale on these lands.