**Art MORTVEDT, Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES, Appellee.**

**No. S–7297.**

Supreme Court of Alaska.

June 20, 1997.

---

Art Mortvedt, Manley Hot Springs, pro se.

Cameron M. Leonard, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

Art Mortvedt appeals separate decisions rendered by the Department of Natural Resources (DNR), which rejected his applications for a Personal Use Cabin Permit (PUCP) and for a negotiated commercial lease. We affirm.

## II. FACTS AND PROCEEDINGS

Many of the relevant facts have previously been set forth in *Mortvedt v. State, Department of Natural Resources*, 858 P.2d 1140 (Alaska 1993) (*Mortvedt I* ). Mortvedt is a professional trapper, wilderness guide, and polar technician. The cabin site involved in this appeal is located at the juncture of the Kobuk and Pah Rivers. In 1981 Mortvedt built a log cabin at the site. He asserts that in 1984 he asked a friend who worked at the DNR to send him information pertaining to the DNR's upcoming PUCP program. Mortvedt subsequently travelled to Antarctica, and never received the requested information. The relevant filing period expired before Mortvedt returned to Alaska, and he did not submit a PUCP application for months following his return. After the DNR denied his untimely PUCP application, Mortvedt appealed to the superior court, which affirmed the DNR's decision. On appeal to this court, we reversed the superior court's affirmance of DNR's denial of Mortvedt's PUCP application, and remanded the matter to the DNR with directions to determine whether Mortvedt had established the elements of equitable estoppel. *Mortvedt I*, 858 P.2d at 1140–44. On remand the DNR again denied Mortvedt's PUCP application.

At the time Mortvedt's appeal of the DNR's denial of his PUCP was pending before the superior court in 1989, Mortvedt applied for a negotiated commercial lease of the site, proposing to use the one-acre location as a stopover point for his guided wilderness trips.[1] The DNR initially approved the lease, but the ruling was appealed by the Northwest Arctic Borough (NAB), which asserted that Mortvedt's proposed use of the site would damage archaeological relics located on the site. The site's historic-archaeological importance was supported by a report submitted by the NAB and authored by two archaeologists. Consequently, the DNR denied Mortvedt's application for a negotiated commercial lease.

Mortvedt then appealed the DNR's decision regarding both the PUCP and the negotiated commercial lease to the superior court which affirmed both decisions. Mortvedt now appeals to this court.

## III. STANDARD OF REVIEW

The DNR determined that issuance of the PUCP and negotiated commercial lease would not be in the best interests of the state. The governing standard of review is set forth in *Trustees for Alaska v. State, DNR*, 865 P.2d 745, 747 (Alaska 1993). There we articulated the relevant standard of review in the following manner:

DNR's best-interest determination is subject to deferential review by this court. Since the determination "involve[s] complex subject matter or fundamental policy formulations," this court reviews the decision "only to the extent necessary to ascertain whether the decision has a 'reasonable basis.'" Nevertheless, this court must ensure that DNR has taken a "hard look" at the salient problems and has genuinely engaged in reasoned decision making. A decision will be regarded as arbitrary "where an agency fails to consider an important factor in making its decision."

*Id.* (citations omitted.) Additionally, no deference is granted to the decisions of the superior court since it acted as an intermediate appellate court. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987).

## IV. DISCUSSION

### A. The Negotiated Commercial Lease Application

The Alaska Historic Preservation Act is designed to preserve Alaska's cultural legacy by protecting historical sites and artifacts.[2] Alaska Statute 41.35.010 declares:

**Declaration of policy.** It is the policy of the state to preserve and protect the historic, prehistoric, and archeological resources of Alaska from loss, desecration,

---

1. Applicable regulations prohibited the use of a personal use cabin for commercial activities. 11 AAC 65.090(6)(I). Given this regulation, Mortvedt agreed to dismiss his PUCP appeal if DNR issued a commercial lease.

2. AS 41.35.010–.240. *Eyak Traditional Elders Council v. Sherstone, Inc.*, 904 P.2d 420, 423 (Alaska 1995).

and destruction so that the scientific, historic, and cultural heritage embodied in these resources may pass undiminished to future generations. To this end, the legislature finds and declares that the historic, prehistoric, and archeological resources of the state are properly the subject of concerted and coordinated efforts exercised on behalf of the general welfare of the public in order that these resources may be located, preserved, studied, exhibited, and evaluated.[3]

In enumerating the powers of the Director of DNR, the legislature provided in part that [u]pon a written finding that the interests of the state will be best served, the director may, with the consent of the commissioner, approve contracts for the sale, lease, or other disposal of available land.... In addition to the conditions and limitations imposed by law, the director may impose additional conditions or limitations in the contracts as the director determines.[4]

After an extensive review of the case, DNR Commissioner Harry Noah entered a final decision rejecting Mortvedt's application for a negotiated lease application. In his decision the Commissioner wrote:

> Based on this review, and in particular, a review of the report filed by Douglas Anderson and Robert Gal, both professional archaeologists, I am persuaded that your cabin is located in the middle of a very significant archeological site in the ancient village of Tautittine. Therefore, I

am further persuaded that issuing a negotiated lease in this vicinity would potentially jeopardize the cultural and archeological integrity of the site, and would therefore not be in the best interests of the state. AS 38.05.035(e). My conclusion in this matter is consistent with the state's policy to protect its archeological resources. *See* the Alaska Historic Preservation Act, AS 41.35.010 et seq.

Mortvedt then moved for reconsideration of the Commissioner's decision on two grounds:

> 1. [That] [t]here is no evidence of an archaeological resource within the one acre land parcel delineated by the brushed lines surrounding [my] cabin [and]

> 2. [That in connection with my winter trapping] there is no threat to any archaeological resource due to frozen ground. During the summer ... [an] occasional stopover during commercial river trips poses no more threat to archaeological resources than any other casual boater "passing through the vicinity".

The Commissioner found Mortvedt's assertion that the proposed lease site contains no evidence of archaeological resources to be without merit.[5] In rejecting Mortvedt's second ground for reconsideration, the Commissioner concluded, "Accordingly, I must still find your assertion that continued repetitive use of the proposed lease area poses no substantial threat to significant archaeologi-

---

**3.** AS 41.35.230(2) defines "historic, prehistoric and archaeological resources" to include "deposits, structures, ruins, sites, ... artifacts, ... or other objects of antiquity which provide information pertaining to the historical or prehistorical culture of people in the state as well as to the natural history of the state."

**4.** *See also* AS 38.05.075(f) and (h).

**5.** In reaching this conclusion the Commissioner explained:

> The file contains a 1991 report prepared by recognized professional archaeologists, Dr. D.D. Anderson of Brown University and Mr. R. Gal of the Chukchi Campus, UAF that document specific archaeological resources on the proposed lease site. That report also documents the relationship of the proposed lease site to other nearby archaeological sites that

> strongly suggest the presence of a larger Tautittine complex. The 1991 report further documents the presence of historic materials, some approximately 100 years of age, in the river directly in front of the area you have applied to lease. The 1991 report by Dr. Anderson and Mr. Gal concluded that the archaeological resources in the vicinity of the proposed lease site: (a) are significant, and (b) indicate a time-depth of perhaps 900 years. From an archaeological perspective the area associated with the proposed lease site is directly associated with state owned lands that are scientifically important because of the opportunity to examine the trade between Inupiat and Indians prior to the contact with Caucasian cultures and how these may have changed after the contact with Caucasians.

cal resources is without merit."[6]

Review of the record discloses more than an adequate evidentiary basis for the Commissioner's best interests rejection of Mortvedt's application for a negotiated commercial lease. In short, we are persuaded that the Commissioner's decision is reflective of a "hard look" and has a reasonable basis in law and fact.

In reaching this holding we necessarily reject Mortvedt's estoppel argument. This argument is based in part on the fact, alluded to above, that the DNR denied Mortvedt's application for a negotiated commercial lease of the site after it became aware of its archaeological significance. However, prior to this determination, the DNR sent Mortvedt a tentative approval of his lease application which read in part, "The Final Finding and Decision has been executed approving your lease application for a term of 10 years." Mortvedt claims that the DNR should be equitably estopped from denying him the lease on the basis of the archaeological evidence, since he relied on the approval document to book tours using the cabin, which he subsequently was forced to cancel. Mortvedt additionally claims that the work he performed in order to prepare his application should serve to estop the DNR from rejecting his lease application.

These arguments are not persuasive. The approval document Mortvedt received from the DNR regarding the lease explicitly stated:

*Appeal Provisions*

A person adversely affected by this decision may appeal this decision.... Any appeal must be received ... within 30 calendar days....

Thus, to the extent Mortvedt relied on the mailing and suffered consequent harm, his reliance was unreasonable, given the explicit notice of appeal contained in it.[7]

**B.** *Mortvedt's PUCP Application*

On remand from *Mortvedt I*, the DNR denied the PUCP application on two grounds. First, the DNR held that Mortvedt did not satisfy the elements of equitable estoppel. As an alternative holding, the DNR considered the merits of Mortvedt's application and denied him a PUCP on the merits. The DNR's decision was based on 11 AAC 65.050(a) and 11 AAC 65.050(b)(6). 11 AAC 65.050(a) states:

The department will issue and renew an applicant's cabin permit if the director finds in writing that the application is for a cabin that ... does not conflict with the public interest criteria as described in (b) of this section.

11 AAC 65.050(b) states in relevant part:

No permit will be issued for a cabin on state land

.   .   .   .   .

---

6. The basis for this conclusion is found in part in the following portion of the Commissioner's reconsideration decision:

Winter trapping and other transitory activities when the ground is frozen are generally recognized as having low threat to most archaeological resources. In this case, however, we are dealing with actual occupancy of the site with a permanent structure, some measure for sanitation, storage of equipment and fuel, and apparently periodically occupied by sled dogs. This type of use is not consistent with the mandates of the Alaska Historic Preservation Act (Title 41.35), especially when the repeated use is in direct association with a significant archaeological site. Periodic use of the proposed lease site for commercial float trips during the summer when archaeological resources are most vulnerable to damage and loss of scientific integrity are completely incompatible. The State Historic Preservation Officer has previously noted that the reported dumping of trash or storing dog dishes in an ar-

chaeological feature is both inappropriate and disrespectful. The brushed areas and foot travel to the proposed lease site across an eroding river bank may accelerate erosion with potential direct loss of scientific data. There is no comparison of the potential threat to archaeologic resources from the periodic, repeated use of the proposed lease site for commercial purposes, with the threat to these significant resources by casual boaters simply passing through the vicinity.

7. The elements of equitable estoppel are the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice. The estoppel will be enforced only to the extent that justice so requires. *Mortvedt I*, 858 P.2d at 1142.

To the extent that Mortvedt is claiming that the effort he expended in preparing the application constitutes prejudice to him, his argument is without merit.

(6) that serves an important ecological function, or is especially sensitive to human disturbance, as determined by the department. . . .

Pointing to the archaeological finds located on the site proposed for the PUCP, the DNR concluded that, even after addressing the merits of Mortvedt's PUCP application, the PUCP should not be issued. The DNR reasoned in part:

The Personal Use Cabin Permit regulations, 11 AAC 65, outline when a permit can not be issued by the Division. Alaska Administrative Code 11 AAC 65.050(b)(6) states that no personal use cabin permit will be issued on state land that serves an important ecological function, or is especially sensitive to human disturbance, as determined by the department. The Department determined in the adjudication of Mr. Mortvedt's commercial lease application, ADL 414270, that this site contained significant archaeological and historical resources requiring protection under the Alaska Historic Preservation Act, AS 41.35.010. The Department reached the same conclusion for this personal use cabin permit request as it is the same site.

■ Mortvedt alleges two main faults with the DNR's decision. First, he claims that since the DNR did not know the archaeological significance of the site at the confluence of the Pah and Kobuk Rivers when he first submitted his PUCP application, it cannot now rely on the archaeological significance of the location as a reason for rejecting his application.[8] Second, while Mortvedt expresses concern for historic preservation, he argues that his activity would not disturb the archaeological finds because he only plans to use the cabin in winter when the ground is frozen.

Both arguments are unpersuasive. Regarding the first, it is possible, as the superi-

or court noted on appeal, that the archaeological importance of the site would have become manifest during the DNR's standard review of permit applications. Even if this is not so, the state notes that it does not make sense, on a policy level, to ignore subsequently discovered information which is relevant to the DNR's decision. We agree. Thus, we conclude that the DNR properly considered the archaeological evidence. Regarding his second contention, Mortvedt has presented no evidence or reports to support his claim that the archaeological evidence would be immune from harm during the winter months.[9]

Based upon our examination of the record, we hold that the DNR's decision that issuing Mortvedt a PUCP for the Pah–Kobuk Rivers site would conflict with the public interest should be sustained. It is clear that there is an adequate evidentiary basis for the DNR's public interest 11 AAC 65.050(a) and (b) ruling. We are persuaded that the DNR in fact took a hard look at all the relevant facts and had a reasonable basis for its decision in light of the applicable law and relevant facts.[10]

## V. CONCLUSION

The superior court's affirmance of the DNR's rejections of Mortvedt's PUCP and negotiated commercial lease applications is AFFIRMED.

8. As support for this proposition, Mortvedt relies on *Walliker v. Escott*, 608 P.2d 1272, 1276 (Wyo. 1980). We discern no support for his claim in that case.

9. *See also* note 6, *supra*.

10. This disposition makes it unnecessary to address the merits of DNR's estoppel decision

made in response to our initial remand. Mortvedt also attempts to raise numerous other issues in this appeal. However, as the State notes, Mortvedt failed to raise these issues to either the DNR or on appeal to the superior court. These points are therefore considered waived. *Arnett v. Baskous*, 856 P.2d 790, 791 n. 1 (Alaska 1993).