**Art MORTVEDT, Appellant,**

**v.**

**STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES, Appellee.**

No. S–4435.

Supreme Court of Alaska.

Aug. 27, 1993.

Art Mortvedt, pro se.

Cameron M. Leonard, Asst. Atty. Gen., Fairbanks, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

David S. Case and Kari L. Bazzy, Copeland, Landye, Bennett and Wolf, Anchorage, for amicus curiae Northwest Arctic Borough.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

In this appeal we are asked to decide whether the State, Department of Natural Resources ("DNR"), abused its discretion when it denied Art Mortvedt a Personal Use Cabin Permit ("PUCP") on the ground that his application was untimely.

**FACTS & PROCEEDINGS:**

Art Mortvedt ("Mortvedt") is a professional trapper, wilderness guide, and polar technician. He has resided in the Upper Kobuk River Valley region for approximately 17 years. The cabin site implicated in this appeal is located at the confluence of the Pah and Kobuk Rivers. According to Mortvedt, a sod house had previously been constructed on the location, but due to its inadequacy, he built a more substantial cabin in 1981. Mortvedt contends that the cabin was used for trapping and subsistence purposes.

Mortvedt had a mining claim on the site and when that lapsed, in 1981, he applied for a Trapping Cabin Construction Permit. His application for a Trapping Cabin Construction Permit was denied because of the cabin's close proximity to Native land and because the area had not been surveyed.

In the fall of 1984 Mortvedt learned about DNR's upcoming Personal Use Cabin Permit ("PUCP") program from a friend, Nancy Falley, who was employed by DNR at the time. Mortvedt claims that he told her that he was going to Antarctica for the

winter and asked that further information regarding the PUCP program be sent to him. The agency record reflects that Falley recalls being asked by Mortvedt to send him more information. However, Falley failed to send Mortvedt the requested information.

On December 31, 1984, DNR issued a media release announcing the PUCP program and describing the "sixty-day, one-time only application period" commencing on different dates for separate regions of the state. The filing period for a PUCP in the Northern Region expired twelve days prior to Mortvedt's return to Alaska on April 12, 1985, although filing was still open for other regions.

Mortvedt did not inquire into the PUCP program upon his immediate return to Alaska because he assumed that if such a program existed, he would have received the requested information from Falley. Mortvedt spent the summer in the bush, and asserts that only in September did he learn that there had, in fact, been a PUCP program. On September 25, 1985, Mortvedt wrote DNR requesting the opportunity to apply at that time. Relying on 11 AAC 65.020(a)(1), DNR's regional manager denied the request noting the program's extensive public notice campaign and concluding that the application was untimely filed. Mortvedt then appealed to Commissioner of the Department of Natural Resources but in accordance with normal intra-agency appellate procedure the Director of the Division of Land and Water Management considered the appeal. *See* 11 AAC 02.010. In a letter responding to Mortvedt's request for reversal of the regional manager's decision, the Director of the Division of Land and Water Management stated:

> The regulations, 11 AAC 65.020(a)(1) state that, "an application for a permit to use an existing cabin on state land must be received by the department during a sixty day application period established by the department and announced by public notice; the application period will be open for one time only by geographic location." The existing regulations do not provide flexibility to make an exception which would allow me to accept your application once the filing period expires. While your absence from the state made participation difficult you had the opportunity to arrange with a friend, agent or spouse to send you the necessary information and applications. Therefore I have no alternative in this case but to deny your request. I do not have the discretion to waive the requirements established by regulation.

Mortvedt subsequently appealed to the Commissioner of Natural Resources.

The Commissioner did not issue a final decision until August 4, 1989. During the intervening three years, DNR was adjudicating a dispute between Mortvedt and another individual regarding three other cabins which Mortvedt had sought permits for under the Trapping Cabin Construction Permit program. In his decision, the Commissioner considered both the propriety of the mining claim at the Pah River site,[1] and the denial of Mortvedt's request to participate in the PUCP program. On the former issue, he found that Mortvedt was in violation of the statutes and regulations governing mining. On the latter issue, he upheld the Director's denial of Mortvedt's application for a PUCP.[2]

---

1. In 1986, following a field inspection, DNR recommended to the Division of Mining that Mortvedt's claim be denied because his affidavits supporting the claim were misleading or falsified, and the claim had not been properly located. Specifically, the inspection showed that the cabin was not being used for a maintenance shop and there was very little mining activity.

2. Senator Fahrenkamp requested that DNR reconsider Mortvedt's request for a PUCP. The Commissioner responded to the Senator in a

letter explaining his reasons for upholding the decision:

> The program was well-advertised and it is our position that the department cannot be expected to personally contact every person outside the state who might have an interest in applying to a specific program such as the PUCP.
> . . . .
> In my review of the file, I have found that even if Mr. Mortvedt had applied for a PUCP on time, it is doubtful that he would have

Mortvedt then appealed the Commissioner's decision to the superior court. The superior court relying on *Division of Elections of State v. Johnstone*, 669 P.2d 537, 547 (Alaska 1983), concluded that Mortvedt's failure to timely comply with the mandatory deadline set out in 11 AAC 65.-020(a)(1) could only be excused if it was "legally impossible to comply with ... [the] filing deadline," or if the governing regulation created "significant confusion" as to filing requirements. The superior court found compelling Mortvedt's arguments that compliance was "factually impossible under the circumstances," but held that the evidence did not support the conclusion that compliance was legally impossible.[3] The superior court affirmed the Commissioner's decision and this appeal followed.

## DID DNR ABUSE ITS DISCRETION BY DENYING MORTVEDT'S APPLICATION FOR A PERSONAL USE CABIN PERMIT?[4]

■ Mortvedt advances numerous arguments in support of his central contention that the Commissioner of Natural Resources' decision constituted an abuse of discretion. More particularly Mortvedt asserts that his application for a PUCP should have been considered timely filed; in fact his application was timely filed; in effect he had submitted a "constructive application" for a PUCP; it was factually and legally impossible for him to comply with the PUCP filing deadline; and application of the doctrine of equitable estoppel prevents the DNR from rejecting his application on the ground that it was untimely. Based upon our review of the parties' briefs and the record we have concluded that we need only address the equitable estoppel issue.[5]

This court has held that estoppel may be invoked against a public entity.[6] In *Municipality of Anchorage v. Schneider*, 685 P.2d 94, 97 (Alaska 1984), we said:

The general elements of equitable estoppel are (1) assertion of a position by conduct or word, (2) reasonable reliance thereon, and (3) resulting prejudice. *Jamison v. Consolidated Utilities, Inc.*, 576 P.2d 97, 102 (Alaska 1978). A fourth element, most often explicitly stated in promissory estoppel cases, is that the estoppel will be enforced only to the extent that justice so requires. *Glover v. Sager*, 667 P.2d 1198, 1202 (Alaska 1983). We believe that this factor should play an important role when considering estoppel against a municipality. Often, even where reliance has been foreseeable, reasonable, and substantial, the interest of justice may not be served by the application of estoppel because the public interest would be significantly

---

been granted the permit. 11 AAC 65.-090[ (6) ](I) states, "the cabin may not be used for a commercial activity or as a permanent residence." In other words, a PUCP could not be issued if a cabin is used for a commercial activity such as trapping. Since Mr. Mortvedt has consistently stated the cabin is to be used for trapping, it would not qualify for a Personal Use Cabin Permit.

3. In part the superior court observed: "He [Mortvedt] does present an extremely compelling argument that compliance was factually impossible under the circumstances of this case; *Johnstone*, however, clearly precludes this court from granting the relief he seeks on that ground." *Division of Elections of State v. Johnstone*, 669 P.2d 537 (Alaska 1983).

4. We review this agency decision under an abuse of discretion standard. *See Forquer v. State, Commercial Fisheries Entry Commission*, 677 P.2d 1236, 1244 (Alaska 1984) ("In order for an applicant ... to successfully challenge a failure to waive a deadline ... he [the applicant]

must show that the Commission clearly abused its discretion in denying his [the applicant's] extension request."). No deference is given to the superior court's decision when that court acts as an intermediate court of appeal. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987).

5. This narrowing of the issues is based on our conclusion that none of the remaining arguments Mortvedt advances have merit.

Although Mortvedt, acting pro se throughout, failed to explicitly argue equitable estoppel, both before the superior court and at the administrative level, he did advance facts which potentially could serve as the foundation for invocation of equitable estoppel against the Department of Natural Resources, State of Alaska.

6. *See LeDoux v. Kodiak Island Borough*, 827 P.2d 1121, 1123, 1124 (Alaska 1992); *Messerli v. Dept. of Natural Resources*, 768 P.2d 1112, 1121 (Alaska 1989); *Fields v. Kodiak City Council*, 628 P.2d 927, 931 n. 2 (Alaska 1981).

prejudiced. However, this is not true in every case. When the public will not be significantly prejudiced, and the other elements of the theory are present, the majority rule which forecloses the use of estoppel causes arbitrary and unjust results.

(Footnote omitted.)[7]

■ Mortvedt argues that the requirements for equitable estoppel have been met. Specifically, he asserts: Nancy Falley, a DNR employee, "asserted a DNR position by word that she would send 'further information' regarding the upcoming Personal Use Cabin Permit" to him in Antarctica; he reasonably relied thereon, and when no "further information" was forthcoming as promised, he "could only therefore assume that there was in fact no PUCP program." "If the further information would have arrived, Mr. Mortvedt could have, and would have, proceeded with application procedures." Resulting prejudice occurred when DNR refused to accept his application for the PUCP program. "If in fact Mr. Mortvedt's application was late, it was the fault of the DNR—not the fault of the applicant Mr. Mortvedt."

DNR argues that Mortvedt's estoppel arguments fail for two reasons:

His reliance on an informal, verbal request to an acquaintance uninvolved in the PUCP program was unreasonable. At the time he visited DNR and spoke with Ms. Falley, the files suggested that the program might start in December 1984. Had he submitted a written request to a DNR employee who was actually involved in the PUCP program, this [sic] his estoppel argument might have merit. Instead, he assumed both that Ms. Falley would chance to hear about the PUCP filing deadlines, and that she would remember their conversation of some months before. That was unreasonable.

In addition, the interests of justice do not support Mortvedt's estoppel claim. By waiting over 5 months after his return from Antarctica before inquiring about the PUCP program, Mortvedt undermined whatever equitable claim he may have had. Reliance on Ms. Falley cannot explain that delay.

Review of the record discloses that Falley wrote a memorandum regarding her communication with Mortvedt concerning

7. In *James v. State*, 815 P.2d 352, 355 n. 9 (Alaska 1991), we commented upon the difference between the doctrines of promissory and equitable estoppel, stating:

Both parties cite precedents discussing not only promissory estoppel but also the related doctrine of equitable estoppel. The primary difference between promissory and equitable estoppels is that the former is offensive, and can be used for affirmative enforcement of a promise, whereas the latter is defensive, and can be used only for preventing the opposing party from raising a particular claim or defense. *See Bubbel v. Wien Air Alaska, Inc.,* 682 P.2d 374, 380 n. 7 (Alaska 1984). Despite this important difference, relevant analogies can be drawn between the two doctrines, since equitable estoppel involves proof of elements similar to the elements of a promissory estoppel claim. *Compare Messerli v. Department of Natural Resources,* 768 P.2d 1112, 1121 (Alaska 1989), *overruled on other grounds, Olson v. State, Dept. of Natural Resources,* 799 P.2d 289 (Alaska 1990) *with Zeman,* 699 P.2d at 1284. It is undisputed that the primary thrust of appellants' claim is offensive rather than defensive, for they seek enforcement of alleged promises by the state.

More recently in *Wright v. State of Alaska,* 824 P.2d 718, 721 (Alaska 1992), we drew the following distinction between equitable estoppel and quasi estoppel:

The elements of equitable estoppel are "the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice." *Jamison,* 576 P.2d at 102. Neither ignorance nor reliance, however, are essential elements of quasi estoppel. *Dressel v. Weeks,* 779 P.2d 324, 331 (Alaska 1989). Quasi estoppel appeals to the conscience of the court and applies where "the existence of facts and circumstances mak[es] the assertion of an inconsistent position unconscionable." *Jamison,* 576 P.2d at 102. This court has instructed trial courts to consider the following factors in determining whether the doctrine of quasi estoppel is applicable: "whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first position; whether the inconsistency was of such significance as to make the present assertion unconscionable; and, whether the first assertion was based on full knowledge of the facts." *Id.* at 103.

(Alteration in original.)

the PUCP program. In this memorandum Falley states in part:

On Sept. 1, 1984, DNR made available to the general public a packet of information containing, in part, the proposed regulations. I was hired by DNR after that information became available (about Sept. 7). Sometime after that (I don't recall), Art visited the office. The proposed program was discussed in our section w/Art. Art must have seen/been given a copy of this currently available information, but I do not know this for a fact. My involvement, as I recollect, was limited to saying I would send more information. None of us knew about a specific program at that time.... Many people may not have been aware of the program at all. Art, in fact, at least had the benefit of knowing such a program was imminent. It was not requested of me specifically, as a DNR employee, that I recall, that I send the public notice of the actual filing period or an application. It is unfortunate if he relied on a friendship to keep him posted on or regarding this program, as that did not occur. If this cabin was so important, however, the ultimate responsibility was his. I firmly believe that I did everything possible under the circumstances.

Given our overall review of the administrative record we have concluded that the case should be remanded to the DNR for the purpose of requiring DNR to make explicit findings of fact as to the four elements of equitable estoppel alluded to above.[8] This remand is based on our view that Mortvedt's evidence at the administrative level sufficiently raised the issue of equitable estoppel.

It appears that upon remand resolution of the following questions will be determinative of the equitable estoppel issue. Did Nancy Falley have either actual or apparent authority to make any assurance to Mortvedt regarding notice? If it is determined that Falley possessed either actual or apparent authority to give Mortvedt notice regarding the PUCP program, was Mortvedt's reliance on any such assurance reasonable?

In the event DNR concludes that Mortvedt has established the elements of equitable estoppel then DNR should proceed to determine the merits of Mortvedt's application for a PUCP.[9]

**AFFIRMED** in part, **REMANDED** in part to the superior court with directions to remand to the Department of Natural Resources to conduct further proceedings in accordance with this opinion.

BURKE, Justice, with whom COMPTON, Justice, joins, dissenting in part.

I respectfully dissent from that part of today's decision requiring a remand on the issue of equitable estoppel.

## I

The court concedes that the issue of equitable estoppel was not properly raised by

---

**8.** On remand both parties should be afforded an opportunity to present additional evidence relevant to the equitable estoppel issue.

**9.** DNR asserts that events have occurred since DNR rendered its final decision which preclude it from issuing Mortvedt a PUCP for the Pah River cabin. More specifically, since its rejection of Mortvedt's application, DNR notes that the Northwest Arctic Borough has selected the land in question under the Municipal Entitlement Act. 11 AAC 65.050 provides:

(a) The department will issue and renew an applicant's cabin permit if the director finds in writing that the application is for a cabin that complies with AS 38.04.035(4) and does not conflict with the public interest criteria as described in (b) of this section.

(b) No permit will be issued for a cabin on state land

....

(3) if the land has been selected under the authority of the Municipal Entitlement Act, AS 29.18[.]

(For purposes of this administrative appeal we assume this regulation applies to the successor statute to AS 29.18.)

We reject the contention that the Northwest Arctic Borough's land selection moots this case. In the event it is determined that Mortvedt should prevail on his equitable estoppel claim, and it is further determined that his application for a PUCP is meritorious and should be granted, the consequence of such determinations is that the Northwest Arctic Borough's land selection would be subject to Mortvedt's equitable interest since his claim antedates the borough's selection. *See Walliker v. Escott,* 608 P.2d 1272, 1276 (Wyo.1980).

Mortvedt. It chooses, nevertheless, to order the case remanded to the department on that issue, because "Mortvedt, ... both before the superior court and at the administrative level, ... advance[d] facts which potentially could serve as a foundation for invocation of equitable estoppel against the Department of Natural Resources, State of Alaska." Majority Op. at 1142, n. 5. The brief that Mortvedt filed in this appeal, containing a very clear assertion of his claim of equitable estoppel, makes it abundantly clear that Mortvedt was perfectly capable of making that argument in a timely and proper fashion. This being the case, there is no reason to depart from the standard rules of appellate procedure.

There are many cases in which the record contains facts which "potentially" could serve to establish a claim not made by a party prior to submission of the party's brief. Nevertheless, it is necessary that there be limits to the amount of oversight that will be allowed, and there must be standards by which this court and litigants can determine which failures will be forgiven and which will not. Also, the court must be careful not to become an advocate for one of the parties. In the case at bar, the court appears to ignore established standards governing the right to appellate review, and its conduct comes perilously close to advocacy on Mortvedt's behalf.

Mortvedt failed to raise the issue of equitable estoppel in the superior court, and it is not one of the issues listed in his statement of points on appeal. We should, therefore, decline to reach the issue in this appeal. Alaska R.App.P. 210(e), 501 P.2d 769, 770 n. 1 (Alaska 1972).[1]

## II

If the issue of equitable estoppel must be addressed, I still see no reason to order a remand. Mortvedts' estoppel claim is based upon the alleged promise by Nancy Falley to send him additional information about the cabin permit program. Falley, however, was a lower echelon employee in the Department of Natural Resources without actual or apparent statutory or regulatory authority to bind her employer to the particular course of action allegedly promised to Mortvedt. *cf. LeDoux v. Kodiak Island Borough*, 827 P.2d 1121, 1123–24 (Alaska 1992); *Messerli v. Department of Natural Resources*, 786 P.2d 1112, 1121 (Alaska 1989); *Municipality v. Schneider*, 685 P.2d 94, 97–98 (Alaska 1984). Given this evidence, I think only one conclusion is reasonably possible: Mortvedt's alleged reliance, whether real or not, was wholly unreasonable.

On the remaining issues, I concur in the opinion of the court.

_____

1. The doctrine of plain error is quite obviously    inapplicable.