Gerald E. CRUM, Appellant,

v.

Robert STALNAKER, in his official capacity as the administrator of the Teachers' Retirement System, Appellee.

No. S–7258.

Supreme Court of Alaska.

April 25, 1997.

Joe P. Josephson, Josephson & Blair, Anchorage, for Appellant.

John B. Gaguine, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

FABE, Justice.

## I. INTRODUCTION

This appeal arises from the denial of a claim by Gerald Crum for unused sick leave credit in the Teachers' Retirement System. The Division of Retirement and Benefits (Division) rejected the claim because Crum filed it after the statutory deadline. The Teachers' Retirement System Board of Directors (Board) and the superior court upheld the denial. We reverse, holding that the Division is estopped from rejecting Crum's claim as late.

## II. FACTS AND PROCEEDINGS

After twenty-one years of teaching, Gerald Crum retired on July 1, 1992. During his years as a teacher, Crum accumulated 183 days of unused sick leave credit, equivalent to about one year of service under AS 14.25.115.[1] Crum estimated that loss of the credit would decrease his retirement benefits by more than $100 per month and decrease his wife's benefits, if he dies before her, by about sixty dollars per month.

When Crum decided to retire, he began his retirement paperwork at the offices of the Matanuska–Susitna Borough (Borough) in June 1992. Crum testified that

> they sat me down at a—at a desk and the lady who was filling out the retirement forms then pulled out a form, one after the other, and wanted me to either fill in the top or the bottom as was appropriate, and then after that was finished I would either sign—some of them had to be signed, some of them didn't and when she finished filling the forms out and—and putting them in front of me, that was the end of—of the process there at the Mat–Su Borough.

On July 8, 1992, the Division sent to Crum a form letter containing several inserts and enclosures. A Division employee placed check marks in various boxes on the form and filled in applicable dates and deadlines. One of the marked sentences stated: "If you want to enroll in the optional Long Term Care (LTC) insurance plan, the enclosed enrollment form must be received before _____." The Division employee filled in the blank with the date "August 30, 1992" and added a note: "If you do not wish to elect Long Term Care please check the appropriate box and return. Thank you." The Division employee also checked the box next to the following sentences: "If you wish to receive credit for your unused sick leave, your claim must be verified and received by us before _____. Please read the insert, 'Minimum Requirements for Retirement and Service Credit' for more information." The date of "July 1, 1993" was inserted in the blank. At the bottom of the form letter, the employee added the following handwritten comment: "Please fill out the enclosed form 'Retiree Information Form' and return along with the Long Term Care form. Thank you very much."

The "Minimum Requirements for Retirement and Service Credit" insert referred to in the letter stated in part:

> You may receive additional credit by claiming your unused sick leave when you retire if you were in T[eachers'] R[etirement] S[ystem] membership service after June 30, 1977. . . .

> Your unused sick leave claim must be verified by your last employer and must be received by the TRS no later than one year after you are appointed to retirement.

Crum testified and the Division does not contest that neither the Division nor the Borough ever provided Crum a form for claiming the sick leave benefit.

---

1. Alaska Statute 14.25.115 provides in part:

   (a) A teacher in membership service on or after July 1, 1977, who is appointed to retirement on or after July 1, 1978, may elect to apply unused sick leave credit in computing the total number of years of credited service under AS 14.25.110(d). . . . To obtain service credit for unused sick leave, a teacher must apply to the administrator no later than one year after appointment to retirement. Unused sick leave shall be credited on a day-for-day basis in accordance with the table for service after July 1, 1969, contained in AS 14.25.220(43). Teacher contributions may not be required for credited unused sick leave.

Crum read the letter and the insert but he did not take any action to claim the unused sick leave credit. He testified as to his belief regarding the application process:

A As I understood that process right there, it was my understanding that there had been already accomplished when I did my mustering out process through the Matanuska–Susitna Borough a (indiscernible) out through the Matanuska–Susitna Borough they made out one form that I was aware of, although I never got to see it or sign it, on the verification of all of my service with the Borough itself. And my thinking at this time when I both read were she had done the check mark and also in that [insert], my concept of that was that I had already completed that particular portion of the retirement process, and, therefore it was—it was completed.

Q In other words, you knew that they were verifying your years for retirement credit.

A That is correct.

Q And you inferred that they were—that that involved a verification of the sick leave as an aspect of that.

A That is correct.

Crum first became aware of his failure to claim the credit in September 1993 when he went to the Division's office in Anchorage and asked why the unused sick leave had not been credited to his retirement account. After a Division employee explained the situation to him, Crum obtained a claim form, completed it with the assistance of the Borough, and returned it to the Division. The Division received the claim on September 13, 1993, approximately two-and-a-half months after the statutory deadline.

Robert Stalnaker, the administrator of the Teachers' Retirement System, rejected the claim. Crum appealed to the Board. After a hearing, the Board upheld Stalnaker's decision by a vote of three to two. The superior court affirmed, and Crum appeals.

### III. DISCUSSION [2]

Crum argues that the Division was estopped from rejecting his late application for unused sick leave credit because it failed to provide him with a claim form or clearly instruct him that he needed to obtain the form.[3] We have stated that estoppel may apply against the government and in favor of a private party if four elements are present: (1) the governmental body asserts a position by conduct or words; (2) the private party acts in reasonable reliance thereon; (3) the private party suffers resulting prejudice; and (4) the estoppel serves the interest of justice so as to limit public injury. *Wassink v. Hawkins*, 763 P.2d 971, 975 (Alaska 1988).

The Board rejected Crum's estoppel argument, concluding that while "principles of estoppel could apply under certain circumstances," it was

not satisfied that the Division, by action or inaction, asserted a position (i.e., that Mr. Crum did not need to make a claim for unused sick leave credit within one year from the date of his termination) or that Mr. Crum had a reasonable basis upon which to rely on a misrepresentation or omission by the government.

The Board also concluded that the

preponderance of the evidence indicates that, more probably than not, Mr. Crum received and had the opportunity to timely review information regarding claims for sick leave and received specific instructions that he verify and claim unused sick leave credit by July 1, 1993. Further, the preponderance of the evidence indicates that

2. We review an agency's findings of fact under the substantial evidence test, *State, Pub. Employees Retirement Bd. v. Cacioppo*, 813 P.2d 679, 683 n. 6 (Alaska 1991), and its resolution of questions of law not involving agency expertise under the substitution of judgment standard. *Earth Resources Co. v. State, Dep't of Revenue*, 665 P.2d 960, 965 (Alaska 1983). When a superior court acts as an intermediate court of appeal, we give no deference to its decision. *State, Dep't of Pub.*

*Safety, Div. of Motor Vehicles v. Fann*, 864 P.2d 533, 535–36 (Alaska 1993).

3. Crum also argues that the deadline imposed by AS 14.25.011 should be considered "directory" rather than "mandatory." Because we reverse on other grounds, we do not address this argument.

Mr. Crum had the opportunity and obligation to be familiar with the provisions of AS 14.25.115 and the explanations of how claims for unused sick leave credit are to be made.

Although we have not applied equitable estoppel to require a government agency to accept a late application because of its failure to provide the proper form, courts in other jurisdictions have done so.[4] For example, in *Iowa Dep't of Transp. v. Nebraska–Iowa Supply Co.,* 272 N.W.2d 6, 14 (Iowa 1978), *overruled in part on other grounds by Estate of Grossman v. McCreary,* 373 N.W.2d 113 (Iowa 1985), the Iowa Supreme Court applied equitable estoppel to prevent the state Department of Transportation (DOT) from removing several billboards. The owner of the billboards argued that he had not been able to file applications for billboard permits by the statutory deadline because application forms had not been available at the DOT's district office. *Id.* at 9, 14–15. The court determined that the statutory requirement that "the application for a permit shall be on a form *provided by the department* " imposed a duty on the DOT to make the necessary forms available. *Id.* at 14 (emphasis supplied in original). The court concluded that

> the inability of the defendant to obtain the requisite forms and make timely applications resulted from the failure of DOT to meet its statutory obligation. Since the defendant made a good faith effort to comply with the statute and was frustrated by DOT, it necessarily follows that DOT

should be estopped from removing the billboards without compensation.

*Id.*

Similarly, in *Hartway v. State, Bd. of Control,* 69 Cal.App.3d 502, 137 Cal.Rptr. 199, 200 (1976), the California Court of Appeal held that a city police department's failure to provide claim forms estopped the state from denying late claims under a state law providing indemnification to needy crime victims. The *Hartway* court determined that the indemnification statute "placed an obligation on the law enforcement agency investigating the crime to provide forms" to eligible individuals. *Id.* The court held that the

> failure . . . to provide claim forms is a valid basis upon which estoppel may be asserted. While the trial court found that "[r]espondents did nothing to mislead [appellants] into not filing their claim . . . within one year," "[w]hen one is under a duty to speak, and has an opportunity to do so, knowing the circumstances require it, an estoppel may arise from his silence."

*Id.* (citations omitted).

■■■ As in the above cases, the Division had an obligation to provide Crum with the proper form to claim the credit. The regulation implementing AS 14.25.115 requires that the claim for unused sick leave credit "be in a form approved by the administrator [of the Teachers' Retirement System]." 2 Alaska Administrative Code (AAC) 36.290(a) (1994). Additionally, the Division's own "Information Handbook" for the Teachers' Retirement System states that the "form [for claiming the unused sick leave credit] will be provided to the member by the Division of Retirement and Benefits." [5]

---

**4.** We applied equitable estoppel in the factual context of a late application in *Mortvedt v. State, Dep't of Natural Resources,* 858 P.2d 1140 (Alaska 1993). In that case, we considered whether the Department of Natural Resources (DNR) abused its discretion when it denied Mortvedt's application as untimely. *Id.* at 1142. After noting that estoppel may be invoked against a public entity, we concluded

> that the case should be remanded to the DNR for the purpose of requiring DNR to make explicit findings of fact as to the four elements of equitable estoppel. . . .
>
> . . . .
> In the event DNR concludes that Mortvedt has established the elements of equitable estoppel then DNR should proceed to determine the merits of Mortvedt's application for a [permit].

*Id.* at 1144 (footnotes omitted).

**5.** The Division asserts that Crum failed to argue that the Division violated its written policy by not providing him with a form. We will consider new arguments on appeal if the issue is (1) not dependent on any new or controverted facts; (2) closely related to the appellant's trial court arguments; and (3) could have been gleaned from the pleadings. *State, Dep't of Revenue v. Gazaway,* 793 P.2d 1025, 1027 (Alaska 1990). The Board squarely addressed the issue of equitable estoppel, and its decision reflects that it was aware of Crum's argument that the Division failed to give him the proper form. Therefore, we hold that this issue is properly before us.

▮ The Division, like the state agency in *Hartway,* argues that because it never made any statements "inconsistent" with the statute, it did not mislead Crum into filing his claim late. It contends that its "omission does not rise to the level of misconduct necessary for estoppel." We disagree. In light of the Division's obligation, its "omission" in failing to provide a form or clear notice of the claims procedure satisfies the first element of the four-part test outlined above for applying estoppel against the government.

Furthermore, Crum's failure to file a timely claim form in reliance on the Division's omission and poorly written instructions satisfies the second element of the estoppel test because it was reasonable. The Division's statements, written in the passive tense and emphasizing the verification of the claim rather than the initial application, gave the definite impression that the employer, not the employee, bears the burden of completing and filing the necessary forms. The contrast between the checkmarked statement regarding the optional insurance plan and the statement about unused sick leave credit reinforced this impression. While the latter states only that the "claim" must be "verified and received" by the Division, the former draws attention to Crum's need to return the "enclosed enrollment form." The Division's handwritten note at the bottom of the letter further accentuated the contrast. While clearly directing Crum to file the insurance form and a "Retiree Information Form," it ignored the unused sick leave credit form, thus seeming to confirm Crum's mistaken belief that he need not act to claim the credit.

Crum's claim meets the third and fourth elements of the estoppel test because his reliance resulted in prejudice, and application of the equitable estoppel doctrine in this case "serves the interest of justice so as to limit public injury." In discussing this final element, we observed in *Municipality of Anchorage v. Schneider,* 685 P.2d 94, 97 (Alaska 1984), that

> even where reliance has been foreseeable, reasonable, and substantial, the interest of justice may not be served by the application of estoppel because the public interest would be significantly prejudiced. However-

er, this is not true in every case. When the public will not be significantly prejudiced, and the other elements of the theory are present ... foreclos[ing] the use of estoppel causes arbitrary and unjust results.

In *Schneider,* we also noted with approval a commentator's statement that "courts should be encouraged to weigh in every case the gravity of the injustice to the citizen if the doctrine is not applied against the injury to the commonwealth if the doctrine is applied." *Id.* at 97 n. 6 (citing 2 C. Antieu, *Municipal Corporation Law* § 16A.06, at 16A–15 (1984)). In this case, estoppel will prevent Crum from suffering a substantial and unfair hardship while causing no harm to the public.

We determine that the Board erred in its legal conclusion that equitable estoppel is unavailable under the facts of this case. The Division's failure to provide Crum with the proper form constituted "silence" where the Division "was under a duty to speak." *Hartway,* 137 Cal.Rptr. at 200. Relying on this silence and the Division's poorly written instructions, Crum reasonably assumed to his detriment that a claim for unused sick leave would be made and verified along with the verification of his years of service. Therefore, following the rationale of *Hartway* and *Nebraska–Iowa Supply,* we hold that the Division is estopped from denying his claim as late.

## IV.  CONCLUSION

For the above reasons, we REVERSE the decision of the trial court and REMAND this case for further proceedings consistent with this opinion.