STATE of Alaska, DEPARTMENT OF COMMERCE AND ECONOMIC DEVELOPMENT, DIVISION OF INSURANCE, Appellant,

v.

Robert E. SCHNELL, Appellee.

No. S–8313.

Supreme Court of Alaska.

Sept. 22, 2000.

---

49. *See Tachick Freight Lines,* 773 P.2d at 453.

50. *See* AS 23.20.525(a)(10)(C).

Signe P. Andersen, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Joe P. Josephson, Josephson & Associates, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

The superior court equitably estopped the Alaska Division of Insurance from suspending and conditioning Robert Schnell's individual insurance producer's license. Because we hold that neither equitable estoppel nor laches barred the division from acting in 1995, we reverse the superior court's ruling. But because the division's director did not consider current evidence that was highly relevant to the sanctions issue, we remand with directions that the division reconsider its sanctions decision after conducting further proceedings.

### II. FACTS AND PROCEEDINGS

Robert Schnell petitioned for personal Chapter 7 bankruptcy in Alaska after suffering financial problems in the mid–1980s. He filed a schedule of assets and liabilities in his bankruptcy proceeding in January 1987. As the bankruptcy progressed it became evident that Schnell had concealed assets. In November 1987 Schnell admitted in bankruptcy court that he owned valuable assets which he had not listed on his schedule of assets.

Soon after admitting his misrepresentation, Schnell applied to New York Life Insurance Company for employment as an insurance agent. New York Life and Schnell entered into an "Agent's Contract" effective March 2, 1988. New York Life has employed Schnell as an insurance agent ever since.

In June 1988 Schnell, who then worked in Arizona for New York Life, applied to the Alaska Division of Insurance for a nonresident individual insurance agent license. The division issued him that license later that month. Not long after, Schnell returned to Alaska and worked in New York Life's Anchorage office. He applied for a resident license in November 1988. The division also issued Schnell that license.

In December 1991 a federal grand jury indictment charged Schnell with false declaration, fraudulent concealment of assets, and perjury for his 1986 and 1987 conduct during his bankruptcy. Schnell pled guilty to one count of false declaration, a felony; he was sentenced in June 1992. The government's sentencing memorandum asserted that there had been "on-going fraud which resulted in the concealment of approximately $200,000 worth of property."

Soon after Schnell's conviction, David Walsh, the director of the Alaska Division of Insurance, issued a statement of accusation against Schnell, and sought to revoke Schnell's insurance agent license.[1] Walsh alleged that two grounds existed for revocation: the felony conviction itself, and the "acts giving rise" to the conviction, which "reflect[ed] untrustworthiness."

Hearing Officer Frank Flavin conducted a hearing on the accusation in November 1992 and issued a proposed decision in late December 1992. He recommended that Walsh (1) suspend Schnell's license for six months; (2) place Schnell on five years' license probation following the suspension; (3) require Schnell to give the division a semi-annual independent audit of his client accounts for the first three years of probation; and (4) require Schnell, during his probation, to provide written notice of his felony conviction to all his existing and new clients.

In January 1993 Walsh rejected the hearing officer's proposed decision and "order[ed] that the entire record be prepared for [his] review of the decision." Walsh then twice renewed Schnell's license; Walsh left the directorship in early 1995.

After Walsh departed, Thelma Snow Walker became acting director. Walker discussed Schnell's case with Assistant Attorney General David Stebing. Walker indicated to Stebing that Walsh had made no decision on the matter and that Stebing's file could be closed.

But in May 1995 Stebing sent a "request for decision" to the division's new director, Marianne Burke. Burke issued a notice allowing the parties "to present written argument" before "the director's final consideration of a decision in this matter." On

---

1. See AS 21.27.410(a).

November 1, 1995, Burke issued her "final decision." Burke decided to suspend Schnell's license for six months and to require Schnell, upon reinstatement of his license, to give written notice of his felony conviction to all new and existing clients for three years. Schnell received this decision almost three years after the initial hearing before Hearing Officer Flavin, and almost three years and five months after his conviction.

Schnell appealed Burke's decision to the superior court, which reversed. It held that the state was estopped from sanctioning Schnell. It reasoned that "[r]ejection of the hearing officer's recommended sanction and then inaction by the [division] constituted conduct relied upon by Schnell in believing that the matter was resolved. Because of this reliance[,] Director Burke is estopped from issuing a new decision in this case." The superior court characterized the division's delay in issuing the final decision as "inexcusable." It also held that, if estoppel did not bar the administrative decision, the grounds for the sanctions required clarification.

The state appeals.

## III. DISCUSSION

### A. Standards of Review

■ The superior court sat as an intermediate court of appeal reviewing the agency decision.[2] In such cases, we independently review the merits of the administrative determination, giving no deference to the superior court's decision.[3]

■ The standard of review for appeals of administrative decisions varies depending on the type of administrative determination being challenged.[4] Because this case addresses multiple types of administrative determinations, we will discuss the respective standards of review in context of each issue.

### B. Does Equitable Estoppel Bar the State's Action Against Schnell's License?

The state argues that the superior court erred in holding that the state was equitably estopped from suspending and conditioning Schnell's insurance license. Schnell argues that the following conduct of the state's agents estops the state from now acting against his license: (1) Walsh's rejection of the hearing officer's proposed decision; (2) Walsh's subsequent renewals of Schnell's license; (3) the three-year lag between the hearing and Burke's final decision; and (4) Walsh's statements to Schnell and his New York Life supervisor that led them to believe that the matter was concluded.

■ Although we give no deference to the superior court's holding, Schnell urges us to affirm it based, among other things, on the superior court's estoppel theory. Whether equitable estoppel applies here is a question of law not involving agency expertise.[5] We therefore apply the substitution of judgment standard of review as to this issue.[6]

■ Courts may apply the doctrine of equitable estoppel against the state,[7] even when the state acts as the sovereign.[8] We have rarely applied estoppel to bar the state's exercise of its sovereign police powers, reasoning that where "a [government]

2. See AS 44.62.560(a).

3. See Bruner v. Petersen, 944 P.2d 43, 47 n. 5 (Alaska 1997) (citing Handley v. State, Dep't of Revenue, 838 P.2d 1231, 1233 (Alaska 1992)).

4. See Kachemak Bay Watch, Inc. v. Noah, 935 P.2d 816, 821 (Alaska 1997).

5. See Power Constructors, Inc. v. Taylor & Hintze, 960 P.2d 20, 26 (Alaska 1998).

6. See Kachemak Bay Watch, 935 P.2d at .821 (citing Handley, 838 P.2d at 1233; Kjarstad v. State, 703 P.2d 1167, 1170 (Alaska 1985)).

7. See, e.g., Crum v. Stalnaker, 936 P.2d 1254, 1258 (Alaska 1997) (holding that equitable estoppel barred state from rejecting Crum's late application for retirement benefits); Property Owners v. City of Ketchikan, 781 P.2d 567, 573 (Alaska 1989) ("Estoppel may be asserted against a public agency."); Wassink v. Hawkins, 763 P.2d 971, 975 (Alaska 1988) ("Estoppel may be invoked as a defense against the government. . . .").

8. See Municipality of Anchorage v. Schneider, 685 P.2d 94, 97 (Alaska 1984).

acts for the good of its citizens rather than a narrow proprietary interest," estoppel would be unjust to the public.[9] But the public interest does not altogether bar the application of estoppel against the state when it acts as sovereign.[10] Rather, as we held in *Municipality of Anchorage v. Schneider*, the public interest is best protected through careful application of the estoppel test itself, which weighs the prejudice to the public interest in each case.[11]

■ In *Wassink v. Hawkins*,[12] we reiterated the four-part test that applies when a litigant seeks to invoke estoppel as a defense against the government.[13] Applied here, this test would require Schnell to show that: (1) the division asserted a position by conduct or words; (2) Schnell acted in reasonable reliance on the division's assertion; (3) Schnell suffered resulting prejudice; and (4) estopping the division from acting against Schnell's license serves the interest of justice so as to limit public injury.[14]

■ Arguing that the four necessary elements are absent here, the state first contends that the division did not assert a position by words or conduct. Schnell argues that Walsh's conduct was an assertion of a position for purposes of the estoppel test.
That Mr. Walsh rejected the recommendations of the hearing officer, Mr. Flavin, failed to enter any order within the statutory time period, issued two unconditional license renewals, and indicated to [Schnell and Schnell's supervisor] that the matter was resolved, are all indicative that a director's decision had been made.

But, for reasons we now discuss, these acts or omissions did not amount to an assertion of a position by the state.

It is correct that Walsh rejected Flavin's proposed decision, but he was entitled to do so under AS 44.62.500(b) and (c).[15] The state correctly argues that when Walsh did so, "he was not expressly or implicitly asserting a position that the matter was resolved without sanction." Alaska Statute 44.62.500 makes this point clear.

That statute gave the division several options when it received the hearing officer's proposed decision. It could have (1) adopted the proposed decision in its entirety; (2) reduced the proposed penalty and adopted the balance of the proposed decision; or (3) rejected the proposed decision in its entirety.[16] If an agency chooses to reject a proposed decision, it "may decide the case upon the record, ... or may refer the case to the same or another hearing officer to take additional evidence." [17] By "not adopting" Flavin's proposed decision, Walsh did not "decide the case" in Schnell's favor. Rather, he deferred reaching a decision.

Walsh twice renewed Schnell's license after rejecting the proposed decision. Schnell asserts that these "unconditional" renewals signify that Walsh had, in fact, reached a final decision not to revoke or suspend Schnell's license.

But the renewals bore no such explicit or implicit assertion. The relevant statute does not condition renewal on the absence of any

9. *Id.*

10. *See id.*

11. *See id.* at 97–98.

12. 763 P.2d 971.

13. *See id.* at 975.

14. *See id.*

15. AS 44.62.500 provides in part:
(b) If a contested case is heard by a hearing officer alone, the hearing officer shall prepare a proposed decision in a form that may be adopted as the decision in the case.... The agency itself may adopt the proposed decision in its entirety, or may reduce the proposed penalty and adopt the balance of the proposed decision.
(c) If the proposed decision is not adopted as provided in (b) of this section the agency may decide the case upon the record, including the transcript, with or without taking additional evidence, or may refer the case to the same or another hearing officer to take additional evidence.... The agency may not decide a case provided for in this subsection without giving the parties the opportunity to present either oral or written argument before the agency.

16. *See* AS 44.62.500(b)-(c).

17. AS 44.62.500(c).

pending division action against the license.[18] Because the statute does not deny the director discretion to renew pending an unresolved license proceeding, renewal is not an assertion that an unclosed proceeding would be abandoned. We also note that if renewal could be the basis for estoppel, it would put a great burden on the state's licensing agencies, predictably increasing both the cost of licensing and the risk that regulated professions pose to the public.

■ Relying on AS 21.06.220(a), Schnell would next find an "assertion" in Walsh's failure to issue a decision within the thirty-day period specified in that statute, or in the asserted untimeliness of Burke's decision.[19] He cites *Crum v. Stalnaker*[20] for the proposition that "an agency's silence can be relied upon to satisfy the first element of estoppel."

Despite the statute's "shall" language, the state argues that the statutory time limit is "directory and not mandatory." The state apparently means that the thirty-day limit defines a period within which the director *should* issue a decision, but does not bar the director from taking action even if it is not taken within thirty days. Preclusion would arguably follow if we construed the time period as "mandatory."

We have never before considered whether AS 21.06.220's thirty-day limit is directory or mandatory.[21] Another court, however, has held that the thirty-day provision in a nearly identical statute was directory and not mandatory.[22] In *Commissioner of Insurance v. Stryker*,[23] the Georgia Court of Appeals held that "[i]n its ordinary significance, 'shall' is a word of command; however, in the absence of injury to the defendant and in the absence of a penalty for failure to comply with the statute, 'shall' denotes simple futurity rather than a command."[24] By that analysis,

Schnell's argument that the thirty-day limit barred action against his license turns on whether the delay injured him and whether the statute imposes a penalty for lack of compliance.

Schnell argues only that the division's three-year delay harmed him. The type of reliance and prejudice he alleges—time futilely spent building an insurance practice, lost alternative business opportunities, and lost deferred compensation—was potentially significant.

But, like the statute in *Stryker*, AS 21.06.220 imposes no penalty or consequences for failing to rule timely. Schnell would read into AS 21.06.220 an absolute bar on state action taken after the thirty-day period expires, but it is unlikely that the legislature intended such an interpretation of AS 21.06.220. To read it that way could lead to absurd and undesirable results; failing to issue a decision within thirty days would forever insulate a license holder from justifiable action against his or her license.

Nor do we agree with Schnell that failing to issue a decision within the period specified in subsection .220(a) must be deemed an "assertion" for equitable estoppel purposes. The failure to make an "order on hearing" within thirty days was not an assertion that Schnell's matter had been or would be favorably resolved. Silence is not sufficient to bar state action in this situation. Moreover, this was an administrative disciplinary proceeding in a heavily regulated profession. Even if the delay was unreasonable, it would be contrary to the public interest to remedy the agency's delay by allowing a violation to go undisciplined. As we held in *In re Triem*, "[t]he public's faith in the system is harmed by lengthy adjudications of discipline matters, but dismissing the matter would simply

---

18. *See* AS 21.27.410(a).

19. AS 21.06.220(a) provides that "[w]ithin 30 days after termination of the hearing, ... the director shall make an order on hearing...."

20. 936 P.2d 1254.

21. *Cf. Crum*, 936 P.2d at 1256 n. 3 (declining to address whether analogous statutory time period directory or mandatory); *Oaksmith v. Brusich*, 774 P.2d 191, 201–02 (Alaska 1989) (holding

time limits for issuance of findings of fact directory, not mandatory).

22. *See Commissioner of Ins. v. Stryker*, 218 Ga. App. 716, 463 S.E.2d 163, 166 (1995).

23. 218 Ga.App. 716, 463 S.E.2d 163.

24. *Id.* at 166.

exacerbate the injury to the public interest."[25]

For similar reasons, we also reject Schnell's argument that Burke's final decision was statutorily untimely.

We therefore conclude that any failure to adhere to the statute did not give rise to an "assertion," for *Wassink* purposes, that Schnell would never be sanctioned.

■ Finally, Schnell claims that Walsh's conversations with Schnell and Schnell's supervisor led them to believe that "the matter was over" and that "the Director had decided to impose no sanctions." We first reject the state's argument that these statements are hearsay; they are admissions of a party-opponent—the state—and therefore admissible non-hearsay.[26]

■ Nonetheless, these statements are not "assertions" for estoppel purposes. As we held in *In re Stephenson*,[27] "it is well established that a state is not estopped to assert a result dictated by its rules, even if a state officer has made a contrary representation from the terms of the rules ... and caused reliance on such representation."[28]

If Walsh's words were representations that the division would not sanction Schnell, they would be "contrary representations from the terms of the rules." That is, Walsh could not issue a decision after rejecting Flavin's proposal without "giving the parties the opportunity to present either oral or written argument before the agency."[29] Moreover,

Walsh made his statements ex parte, during informal conversations with Schnell and his managing partner. Thus, whatever Walsh said, and however great Schnell's reliance thereon, his words did not estop the state from later rendering a decision in accordance with its rules.

Because the first element necessary for equitable estoppel is absent, we need not consider the other three elements.

### C. Does Laches Bar the State's Action Against Schnell's License?

Schnell alternatively argues that we should affirm because laches barred the state from acting. The state argues that Schnell cannot overcome the threshold question in such cases: whether the doctrine applies.[30] It also argues that Schnell cannot satisfy the two-part test for applying the doctrine, and that applying laches for nonenforcement of law for agency delay would be contrary to the public interest. Whether the doctrine of laches applies here is a question of law not involving agency expertise. We therefore apply the substitution of judgment standard of review.[31]

■ As we stated in *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*,[32] the doctrine of laches "creates an equitable defense when a party delays asserting a claim for an unconscionable period."[33] To bar a claim under laches, "[a] court must find both an unreasonable delay in seeking relief and resulting preju-

---

**25.** 929 P.2d 634, 641 (Alaska 1996); *see also Attorney Grievance Comm'n v. Kahn*, 290 Md. 654, 431 A.2d 1336, 1352 (1981) ("Because the purpose of disciplinary action against an attorney is to protect the public, dismissal of the disciplinary petition for the sole reason that the Attorney Grievance Commission failed to proceed with the proper dispatch is manifestly unwarranted."); *Hickey v. Department of Health & Consol. Lab.*, 536 N.W.2d 370, 372 (N.D.1995) ("The primary purpose of professional disciplinary proceedings is to protect the public, and it would be inconsistent with the public interest to dismiss a disciplinary proceeding simply because of delays in initiating, conducting, or concluding the proceedings.").

**26.** *See* Alaska R. Evid. 801(d)(2)(D).

**27.** 511 P.2d 136 (Alaska 1973).

**28.** *Id.* at 143.

**29.** AS 44.62.500(c).

**30.** Citing two other laches cases, we placed great emphasis on this factor in *Jackson v. Kenai Peninsula Borough*, 733 P.2d 1038, 1043–44 (Alaska 1987) (citing *Moore v. State*, 553 P.2d 8, 20 (Alaska 1976)). *See also Concerned Citizens of So. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 457 (Alaska 1974).

**31.** *See Kachemak Bay Watch*, 935 P.2d at 821 (citing *Handley*, 838 P.2d at 1233; *Kjarstad*, 703 P.2d at 1170).

**32.** 527 P.2d 447.

**33.** *Concerned Citizens of So. Kenai Peninsula*, 527 P.2d at 457. While we have been reluctant to apply laches against the state, we have refused to hold that laches may never be invoked against it. *See Jackson*, 733 P.2d at 1043–44.

dice to the defendant."[34] Laches is usually invoked to bar a claim because the plaintiff has unreasonably delayed seeking relief or protecting a known right.[35] Laches has been invoked in special circumstances to bar claims due to prosecutorial delay,[36] but it does not bar claims due to adjudicatory delay.

The division did not delay seeking relief or prosecuting its case. It sought revocation of Schnell's license in July 1992, two months after he was sentenced for false declaration. The revocation hearing was held in November 1992 and the hearing officer issued his recommendation in December. The division's delay therefore was not in seeking relief, but in rendering its decision and imposing sanctions. Schnell concedes as much when he states in his appellate brief, "[T]he concern here is not about the director's delay in first raising issues ... in 1992, but about the delay of directors in promulgating sanctions after the 1992 hearing until 1995."

Because the division's delay here was adjudicatory, we decline to apply the doctrine of laches to bar the state's action against Schnell's license.

### D. Does Res Judicata Bar the State's Action Against Schnell's License?

Schnell argues that because "Walsh rejected the sanctions recommended by Hearing Officer Flavin, which are similar to the sanctions now sought to be imposed by Director Burke," the doctrine of res judicata bars Burke from reaching a result different from the result Walsh reached. Whether res judicata bars the state's action here is a question of law not involving agency expertise. We therefore apply the substitution of judgment standard of review.[37]

Res judicata requires that a judgment be final.[38] As we saw above in Part III.B, Walsh's rejection of Flavin's proposed decision was not a final decision. Schnell's res judicata claim therefore fails.

### E. Must the Sanctions Against Schnell Be Reconsidered?

Schnell argues that his sanctions are excessive; he claims that his trouble-free record during the long delay in imposing the sanctions confirms his assertion that public protection does not require the harsh sanctions imposed in 1995. The most onerous sanction appears to be the requirement that he give written notice of his conviction to new and existing clients for three years after his suspension ends.[39]

Before issuing her final decision in 1995, the director issued a notice that permitted

---

**34.** *Concerned Citizens of So. Kenai Peninsula,* 527 P.2d at 457. In later decisions, we have tended to collapse these two "prongs." *See, e.g., McGill v. Wahl,* 839 P.2d 393, 399 (Alaska 1992) ("The analysis is actually less of a distinct two-part test than an overall balancing of equities.") (citing *City of Juneau v. Breck,* 706 P.2d 313, 316 n. 14 (Alaska 1985)).

**35.** *See* Dan B. Dobbs, *Law of Remedies* § 2.4(4), at 103 (2d ed. 1993) ("In its most orthodox form, laches is unreasonable delay by the plaintiff in prosecuting a claim or protecting a right of which the plaintiff knew or should have known, and under circumstances causing prejudice to the defendant.").

**36.** *See id.* A plaintiff may be barred by delays occurring before filing suit. *See id.* In unusual circumstances, claims arising under the Civil Rights Act of 1965 may be barred by delays in prosecution of a suit. *See id.* at 103–04 & n. 9. *But see Jackson,* 733 P.2d at 1038 (refusing to apply laches to eighteen-year delay in enforcing zoning ordinance by local government).

**37.** *See Kachemak Bay Watch,* 935 P.2d at 821 (citing *Handley,* 838 P.2d at 1233; *Kjarstad,* 703 P.2d at 1170).

**38.** *See, e.g., In re Mackay,* 416 P.2d 823, 838 (Alaska 1964) (citing *American S.S. Co. v. Wickwire Spencer Steel Co.,* 8 F.Supp. 562, 566 (S.D.N.Y.1934)).

**39.** The notice the director required read:

As a condition of my State of Alaska insurance license, I am required to give notice that I have been convicted of felony perjury in the United States District Court at Anchorage, Alaska, Case No. A91–122 CR, entered on June 9, 1992. Pursuant to this condition, I must provide this "Notice" to new and existing clients and secure your signature below, before I may practice on your behalf as an insurance producer. Your signature below verifies that you have read this "Notice" and understand it. If you have any questions please contact the Division of Insurance at 269–7900.

the parties to present "written argument." She accepted additional written evidence from the attorney general (bearing on Schnell's pre–1992 conduct) and from Schnell (short 1995 letters from Schnell and his supervisor alleging Schnell's good professional behavior). She conducted no new hearing to supplement the 1992 hearing conducted by the hearing officer, and did not reopen the 1992 hearing. The two short letters Schnell submitted might have supported lesser sanctions; there was no evidence of any misconduct between 1992 and 1995. There was thus no unfavorable current information available to the director in 1995.

The director noted Schnell's clean 1992–95 record when she imposed sanctions in 1995; although she declined to revoke his license, she imposed the sanctions "to affirm professional standards and to protect the public."

After the sanctions were imposed, Schnell appealed and sought a stay in the superior court. His stay motion papers included detailed affidavits from Schnell and his supervisor discussing the long delay, the facts on which Schnell based his estoppel and laches arguments, the severe effect the sanctions would have on Schnell, and Schnell's good professional record. The superior court granted the stay pending appeal.

In addition to the equitable arguments we reject above in Parts III.B and C, Schnell also argued in the superior court that the sanctions were excessive and arbitrary, and were so harsh that they were equivalent to revoking his license; he also argued that lesser sanctions (such as increased monitoring and reporting by his employer, special bonding, continuing education, and account auditing) would suffice. He sought complete relief. He alternatively asked the superior court to remand and instruct the director to conduct a new hearing at which Schnell's record to the date of the new hearing could be presented and considered.

The superior court granted Schnell complete equitable relief, but also observed that if estoppel did not bar the director, it would have been necessary to remand so the agency could clarify the exact grounds for the sanctions.

 It is undisputed that Schnell had been convicted of a felony, and that the director has authority to suspend or revoke the license of a person convicted of a felony.[40] The state correctly argues that the director has broad discretion to decide what sanction is appropriate. But such broad discretion must be exercised reasonably, based on the relevant information. Schnell's professional record is highly relevant.

 Although we have reversed the superior court's grant of complete equitable relief to Schnell, we think it is necessary to allow the alternative relief that the superior court indicated it would grant if estoppel did not apply: remand to the division with instructions to clarify its sanctions order. We further conclude that, on remand, the division must conduct a hearing to consider current evidence relevant to the issue of sanctions, including evidence of Schnell's post–1992 conduct and other circumstances addressed in the two affidavits supporting Schnell's 1995 superior court motion for stay.

Schnell did not have an opportunity to present new sanctions evidence before the director issued her final decision; the director's July 1995 Notice of Opportunity only gave Schnell "an opportunity to present additional argument" pursuant to AS 44.62.500(c). But the updated evidence that Schnell presented to the superior court was highly relevant to the issue of sanctions. It described Schnell's post–1992 conduct, the current effect that the hearing officer's proposed sanctions would have, and alternative supervisory controls available through Schnell's employer.

As we have already indicated, this evidence was insufficient to justify dismissal of the administrative action. But given the exceptionally long period of delay before the director's final sanctions decision, as well as the importance of basing that decision on current information, we conclude that it was incumbent on the director to offer Schnell an opportunity to present updated sanctions evi-

**40.** *See* AS 21.27.410(a)(7).

dence and to request a pre-decisional hearing on the sanctions issue.

## IV. CONCLUSION

Equitable estoppel does not bar the division because an essential element of that doctrine is absent. And laches does not apply to adjudicatory delay. We therefore REVERSE the superior court's decision on these issues. But because the 1995 sanctions decision was made without benefit of current evidence highly relevant to the sanctions issue, we AFFIRM the superior court's alternative disposition. Accordingly, we REMAND with directions that the division reconsider its sanctions decision after conducting a hearing on the sanctions issue in accordance with this opinion.

CARPENETI, Justice, concurring.

After rejecting the hearing officer's recommendations, Director Walsh failed to enter any order within the period required by the statute, failed to issue any formal order for over two years, issued two unconditional license renewals, and affirmatively stated to Schnell or his supervisor on more than one occasion that the matter was resolved in Schnell's favor. I would hold that these facts, collectively, amount to "assertion of a position" for purposes of the test regarding when estoppel may be invoked against the government.[1]

I agree with the court that rejection of the hearing officer's recommendations, without more, is not an assertion of the position that the case was being decided in Schnell's favor;[2] the director was free to decide the case differently himself or to refer it to another hearing officer. Nor did issuance of two unconditional license renewals necessarily suggest anything more than that the matter remained under review. And I agree that the long period of delay after the director rejected the hearing officer's recommendation did not constitute an assertion.[3] All of these occurrences, individually or collectively, can mean something other than that the case was being resolved in Schnell's favor.

But I cannot agree with the court that the director's statements to Schnell and Schnell's employer, considered in the context of all of the facts, do not constitute "assertions" within the meaning of our cases.[4] By affidavit, Schnell's supervisor established that he had had a number of "conversations with Mr. Walsh in which [Mr. Walsh] indicated that he had decided that Mr. Schnell should be able to proceed with his career in the industry, without sanctions." With specific reference to a meeting in July 1994, that supervisor reported that he thanked Walsh for refusing to impose sanctions and that "Mr. Walsh responded that he just could not see taking away Mr. Schnell's livelihood, especially 'so late in the game,' or words to that effect, and that he was glad that the issue was behind Mr. Schnell." The state has not contested that these statements were made. In these circumstances, the conclusion seems inescapable that the state asserted a position in this matter.

The court avoids that conclusion by relying on a case that is quite distinguishable from the present case, factually and legally.[5] In In re Stephenson,[6] an applicant for admission to the state bar argued that the bar should be estopped from denying him admission because he was misled into believing that he was eligible for reciprocity as the result of the state bar supplying him with only a part of the information (state statutory requirements) pertinent to bar admission and not providing him with other relevant material (a state bar rule).[7]

Stephenson is factually distinguishable because in the present case there is no dispute from the state that Walsh made the statements attributed to him by Schnell. Yet the

---

**1.** See Wassink v. Hawkins, 763 P.2d 971, 975 (Alaska 1988) (citation omitted).

**2.** See Op. at 356.

**3.** See id. at 357–358.

**4.** See id. at 357–358.

**5.** See id. at 358.

**6.** 511 P.2d 136 (Alaska 1973).

**7.** See id. at 143.

state bar in *Stephenson* denied Stephenson's allegations and we decided the case on that distinguishing fact: "The Executive Director has further denied under oath that he furnished erroneous information to the applicant as to the requirements for admission. We thus find no merit to this contention."[8]

More importantly, *Stephenson* is legally distinguishable from the present case. After disposing of Stephenson's claim on factual grounds, we went on to state the rule the court relies on today: "Furthermore, ... a state is not estopped to assert a result dictated by its rules, even if a state officer has made a contrary representation from the terms of the rules ... and caused reliance on such representation."[9] The "result dictated by its rules" in *Stephenson* was that a bar applicant was *not* entitled to admission by reciprocity under the facts of that case.[10] And that remained so no matter what the applicant might have been told. But the rules in this case do not dictate any particular outcome for Schnell. Walsh, the division director charged with the responsibility of deciding Schnell's case, had the power to "decide the case upon the record ... with or without taking additional evidence."[11] He was free to do exactly what he had told Schnell he had done: allow him to proceed in his career without sanctions.

It is true, as the court notes, that Walsh was under the statutory obligation to give the parties the chance to present oral or written argument before rendering his final decision,[12] and that he did not do so. This procedural failure, however, should not form a basis for concluding that the state did not make an assertion to Schnell.

Concluding that Schnell met the first part of the *Wassink* test, I would consider the other requirements of that case. While Schnell's reliance on the state's assertions appears reasonable to me, and there is evidence that he suffered some prejudice as a result, I do not believe that estopping the division from taking action in regard to Schnell's license "serves the interests of justice so as to limit public injury."[13] I reach this conclusion for the reasons the court sets out in its discussion of administrative delay: in a disciplinary proceeding in a heavily regulated profession, it would be contrary to the public interest to remedy the agency's delay by allowing a violation to go undisciplined.[14]

For this reason, and because I agree that the sanctions decision should have been made (and should now be made) with current information, I agree with the court's remand of this case for a hearing to consider current evidence relevant to the issue of sanctions.

---

8. *Id.*

9. *Id.*

10. *See id.* at 138–42.

11. AS 44.62.500(c).

12. *See* Op. at 358.

13. *Wassink v. Hawkins,* 763 P.2d 971, 975 (Alaska 1988) (citation omitted).

